Stephen T. JONES, et al.,
Plaintiffs–Appellants,

v.

SOUTHERN MARINE & AVIATION
UNDERWRITERS, INC., et al.,
Defendants,

Dennis Edward Jennings, et al.,
Defendants–Appellees.

No. 89–4106.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1989.

---

Michael A. Akers, Charles G. Copeland, Susan H. Rushing, Thomas A. Cook, Copeland, Cook, Taylor & Bush, Jackson, Miss., Wilburn Huche, Rainer, Hyche & Toney, Brandon, Miss., for plaintiffs-appellants.

Walker W. Jones, III, Jean H. Sansing, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., Winston E. Rice, Rice, Fowler, Kingsmill, Vance & Flint, New Orleans, La., for defendants-appellees.

Before THORNBERRY, GARWOOD and DUHE, Circuit Judges.

THORNBERRY, Circuit Judge:

Stephen T. Jones and other residents of Rankin County, Mississippi, (Plaintiffs) appeal from summary judgment granted to Dennis Edward Jennings, et al., the representatives of certain underwriters at Lloyd's, London, (Underwriters) in a garnishment action for amounts that Plaintiffs claimed were due from Underwriters pursuant to an agreed judgment in the E.N. Ross Well Blowout Litigation in Mississippi state court. We affirm the grant of summary judgment to Underwriters.

## FACTS AND PROCEDURAL HISTORY

This case arises out of an action in Mississippi state court in which Plaintiffs sued the trustee in bankruptcy for Tomlinson Interests, Inc. (Tomlinson) and other defendants in connection with an above-ground blowout of the E.N. Ross No. 2 gas well on July 15, 1985. This well was owned by Tomlinson and located in Johns Field in Rankin County. Plaintiffs sought damages in Mississippi state court for bodily injury, property damage, and loss of use of their property caused by the escape of hydrogen sulfide and other toxic gases as a result of the blowout.

At the time of the blowout, Tomlinson had comprehensive general liability coverage under several insurance policies issued by Hartford Accident and Indemnity Company and Hartford Casualty Insurance Company (Hartford). Hartford covered Tomlinson under a primary policy and two umbrella policies providing up to $5,000,000 of coverage. Tomlinson also had coverage for controlling a blowout of the E.N. Ross No. 2 well and for redrill of a replacement well, under two certificates of insurance, numbers 35120 and 34595, subscribed to by Underwriters.

The damages alleged by Plaintiffs were covered under Section C of certificates 35120 and 34595, which provided insurance for cleanup expenses, seepage, pollution, and contamination. Section C says in pertinent part:

1. INSURING AGREEMENTS:

Underwriters, subject to the limitations, terms and conditions of this Certificate, agree to indemnify the Assured against or pay on behalf of the Assured:

(a) All sums which the Assured shall by law ... be liable to pay ... as damages for bodily injury (fatal or nonfatal) and/or loss of, damage to or loss of use of property caused by or alleged to have been caused directly or indirectly by seepage, pollution or contamination arising from wells insured. . . .

After trial in the state court had begun, Tomlinson and the other defendants entered into an agreed judgment with Plaintiffs on October 16, 1986, in the amount of $1,665,283 plus interest. Hartford paid $1,065,283 toward satisfaction of this judgment, leaving $600,000 unpaid.

Plaintiffs then filed a suggestion for writ of garnishment against Underwriters and their issuing agent, Southern Marine & Aviation Underwriters, Inc., (Southern Marine) in Mississippi state court for the outstanding $600,000 balance of the agreed judgment.[1] On August 7, 1987, the defendants removed the garnishment action to the federal district court for the Southern District of Mississippi. The district court dismissed Southern Marine on November 19, 1987, because it had acted merely as an agent for Underwriters.

Both Plaintiffs and Underwriters moved for summary judgment. The district court denied Plaintiffs' motion for summary judgment and granted Underwriters' motion on the ground that, because the agreed judgment did not hold Tomlinson personally liable, Underwriters did not have to pay insurance proceeds to Plaintiffs under Section C of the certificates, which requires personal liability of the insured as a condition of coverage. Plaintiffs appeal both the denial of their motion for summary judgment and the grant of Underwriters' motion for summary judgment.

## DISCUSSION

### I. STANDARD OF REVIEW

The standard of review at the appellate level of a district court's grant or denial of summary judgment remains the same as at the trial court level. *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 904 (5th Cir.1985). For summary judgment to be granted, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The appellate court decides questions of law, however, just as it decides questions of law outside the summary judgment context: *de novo. Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988); *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987). The construction and effect of an insurance policy are matters of law to be decided by the court. *Diversified Group, Inc., v. Van Tassel*, 806 F.2d 1275, 1277 (5th Cir.1987); *Overstreet v. Allstate Ins. Co.*, 474 So.2d 572, 575 (Miss.1985). This court is thus free to come to its own conclusions on the coverage of certificates 35120 and 34595 by an independent examination of the record that was before the district court.

Because the pertinent provisions of certificates 35120 and 34595 are identical and the relevant facts are the same for both certificates, this court will consider the two certificates collectively.

### II. SUMMARY JUDGMENT FOR UNDERWRITERS

#### A. *Policy Provisions*

On appeal, Plaintiffs argue that Underwriters are bound by the agreed judgment because the insurance certificates unambiguously cover the liability sued for in the state court action that was resolved by the agreed judgment, and the proceeds of the policy are thus subject to garnishment to satisfy the judgment. Under Mississippi law, insurance policy proceeds are properly subject to garnishment. *Briggs v. Benjamin*, 467 So.2d 932, 934 (Miss.1985). Therefore, it would appear at first glance that any proceeds due under the two certificates could be subject to garnishment by

---

**1.** Plaintiffs have also filed a separate garnishment suit against Hartford for the $600,000 balance, which is presently on appeal to this court.

Plaintiffs to satisfy the agreed judgment. Indeed, the kinds of damages claimed by Plaintiffs and awarded to them in the agreed judgment fall under the unambiguous language of Section C of the insurance certificates, covering damages caused by seepage, pollution, and contamination. Other parts of Section C of the certificates, however, read in conjunction with the agreed judgment, preclude Underwriters' liability for these damages.

■ First, in section 1(a), quoted above, Underwriters agreed to pay on behalf of Tomlinson all sums that Tomlinson is liable to pay; in other words, Tomlinson's personal liability is a condition precedent to coverage. The terms of the agreed judgment itself provide, however, that Tomlinson and the other defendants are not legally obligated to pay it:

> [T]his Agreed Judgment shall not constitute a lien or encumbrance against the Estate in Bankruptcy of Tomlinson Interests, Inc., [or] Gary J. Knostman (individually or as Trustee of said Estate) ... for their personal assets or properties (real or personal) but shall constitute only a lien and encumbrance against any insurance coverages available to said Defendants which are applicable to the claims made in these causes, for which execution, garnishment, and other legal process may issue.

Because Tomlinson is not personally liable under the agreed judgment, Underwriters cannot be liable to Plaintiffs under Section C of the insurance certificates. *See Putman v. Insurance Co. of N. Am.*, 673 F.Supp. 171, 177 (N.D.Miss.1987), *aff'd*, 845 F.2d 1020 (5th Cir.1988) (under Mississippi law, a stipulation that removed the personal liability of the insured for any judgment in excess of $100,000 also removed the obligation of the insurer, where the insurance policy provided coverage only if the insured was liable).

■ Second, Underwriters may also rely on the Cost and Appeals Clause of Section C of certificates 35120 and 34595:

> No settlement of losses by agreement shall be effected by the Assured without the consent of Underwriters where the Assured's final gross claim will exceed the retention of the Assured.

It is undisputed that, contrary to this provision's requirement, Underwriters did not consent to the agreed judgment. Neither did Underwriters participate in settlement negotiations. Plaintiffs' list of the persons who negotiated the agreed judgment confirms Underwriters' absence. In fact, neither Tomlinson nor Hartford ever notified Underwriters that settlement negotiations were being held, nor did Tomlinson ever seek Underwriters' consent before the settlement was executed and the agreed judgment was entered. Rather, Plaintiffs pursued the limits of coverage under Hartford's policies.

Generally, when an insured makes a settlement without the insurer's previous consent as required by the policy, the insured is not entitled to reimbursement from the insurer because the insured has breached a condition of coverage. *See* 7C J. Appleman, *Insurance Law and Practice* 4714 at 521 (1979). Therefore, by the very terms of the insurance certificates, Tomlinson's failure to obtain the participation and consent of Underwriters in the negotiation and execution of the agreed judgment would appear to release Underwriters from any liability under the agreed judgment.

Underwriters thus may avoid liability under the agreed judgment by relying on the insurance policy requirements of (1) the insured's personal liability and (2) Underwriters' consent to settlement. The only circumstance in which Underwriters can be bound by the agreed judgment is if they waived the right to rely on these policy provisions by breaching a defense obligation to Tomlinson, their insured. *See Putman*, 673 F.Supp. at 177. In *Coblentz v. American Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir.1969), a stipulation relieving the insured of personal liability (like the agreed judgment in the present case) did not preclude the insurer's liability. Despite language in the insurance policy requiring that the insured be personally liable, the insurer was held liable because it had breached a duty to defend its insured.

*Coblentz,* 416 F.2d at 1063 (applying Florida law).

Similarly, whether Underwriters can enforce the Cost and Appeals Clause depends upon whether they breached any defense obligation to Tomlinson. An insurer that unjustifiably refuses to defend its insured "will be liable for the amount of any settlement even if the applicable policy requires the insurer's consent to any settlement agreed to by the insured." *Martin v. Travelers Indem. Co.,* 450 F.2d 542, 550 (5th Cir.1971) (applying Mississippi law). *See also Greenville Shipbuilding Corp. v. Hartford Accident & Indem. Co.,* 334 F.Supp. 1228 (N.D.Miss.1971), *aff'd,* 460 F.2d 1063 (5th Cir.1972) (a Mississippi court would prohibit an insurer from invoking its policy provision requiring consent to settlement, if the insurer unjustifiably denied liability); *Mavar Shrimp & Oyster Co. v. United States Fidelity & Guar. Co.,* 187 So.2d 871, 875 (Miss.1966) (if an insurer unjustifiably refuses to defend a suit, the insured may make a reasonable settlement, for which the insurer will be held liable).

■ These cases indicate that unjustifiably denying liability or breaching a duty to defend will preclude an insurer from relying on policy provisions that deny coverage. Therefore, if Underwriters breached a duty to defend Tomlinson, Underwriters can be held liable under the agreed judgment despite the requirement of Tomlinson's personal liability and the Cost and Appeals Clause.

### B. *Duty to Defend*

Underwriters can have breached a duty to defend Tomlinson only if they had such a duty in the first place. Unlike many liability insurance policies, certificates 35120 and 34595 contain no provision contractually obliging Underwriters to defend Tomlinson against claims falling under policy coverage. Although the scope of a contractual duty to defend has been the subject of much litigation, the cases do not often discuss the source of the duty, perhaps because the standard comprehensive general liability policy specifically gives the insurer a contractual right and duty to defend.

With policies that do not contain a contractual duty to defend, the case law is not consistent. Some courts have implied the existence of a duty to defend in liability policies that do not specifically negate such a duty. *E.g., Conanicut Marine Servs., Inc. v. Insurance Co. of N. Am.,* 511 A.2d 967, 970 (R.I.1986); *Aetna Casualty & Sur. Co. v. Certain Underwriters at Lloyds of London,* 56 Cal.App.3d 791, 801, 129 Cal.Rptr. 47, 53 (Ct.App.1976). Other courts have held that the absence of a contractual provision negates the existence of a duty to defend. *E.g., Westchester Fire Ins. Co. v. Rhoades,* 405 S.W.2d 812 (Tex.Civ.App.—Austin 1966, writ ref'd n.r. e.). And some courts have found that even when the policy provides that the insurer may choose to defend if it wishes, this contractual right to defend does not imply a duty to defend. *E.g., Kienle v. Flack,* 416 F.2d 693 (9th Cir.1969) (Washington law) (professional errors and omissions policy); *American Casualty Co. of Reading, Pa. v. FDIC,* 677 F.Supp. 600, 605–06 (N.D. Iowa 1987); *City of Peoria v. Underwriters at Lloyd's, London,* 290 F.Supp. 890 (S.D.Ill.1968).

■ We do not see how Underwriters could have breached a duty to defend when their policy certificates did not impose a contractual duty to defend. Furthermore, two provisions in Section C appear to negate any possible implication of a duty to defend. First, section 1(c) provides that

Underwriters, subject to the limitations, terms and conditions of this Certificate, agree to indemnify the Assured against or pay on behalf of the Assured:

c. Costs and expenses incurred in the defense of any claim or claims, and also costs and expenses of litigation awarded to any claimant against the Assured, by way of interest on judgments, investigation, adjustment and legal expenses....

This clause suggests that Tomlinson is responsible for conducting its own defense and Underwriters will merely pay the costs of such defense. We do not read this clause to impose a duty to defend upon Underwriters. *See Zaborac v. American*

*Casualty Co. of Reading, Pa.*, 663 F.Supp. 330, 333 (C.D.Ill.1987) (directors' and officers' liability policy); *Crown Center Redevelopment Corp. v. Occidental Fire & Casualty Co.*, 716 S.W.2d 348, 357 (Mo.Ct. App.1986) (excess policy). *Contra Okada v. MGIC Indem. Corp.*, 795 F.2d 1450 (9th Cir.1986) (Hawaii law).

Second, the Cost and Appeals Clause provides that Underwriters may elect to conduct an appeal of a judgment implicating coverage if Tomlinson chooses not to appeal it. This clause suggests that Underwriters have assumed no right or duty under the policy to conduct the defense of the original action.

■ In Mississippi and Fifth Circuit cases holding that an insurer had waived its right to rely on policy provisions that precluded its liability under a settlement, at least one of the following factors was present and specifically mentioned in each opinion: (1) the insurer had a contractual duty to defend, which it breached, (2) the insurer refused to defend when the insured requested a defense, or (3) the insurer specifically denied coverage when a claim was made under the policy prior to settlement. *E.g., State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 So.2d 667, 669 (Miss. 1971) (contractual duty); *Mavar Shrimp & Oyster Co. v. United States Fidelity & Guar. Co.*, 187 So.2d 871, 875 (Miss.1966) (contractual duty, refusal to defend, and denial of coverage); *Boutwell v. Employers' Liab. Assurance Corp.*, 175 F.2d 597, 600–01 (5th Cir.1949) (Mississippi law) (refusal to defend); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F.Supp. 286, 290 (S.D.Miss.1984) (denial of coverage); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116 (5th Cir.1983) (Texas law) (denial of coverage and refusal to defend); *Coblentz v. American Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir.1969) (Florida law) (refusal to defend). *See also Greenville Shipbuilding Corp. v. Hartford Accident & Indem. Co.*, 334 F.Supp. at 1229 (insurer was not liable under settlement made by insured's other insurer despite contractual duty to defend, because it never refused to defend and defense was never requested).

In the present case, none of these three factors is present. Underwriters had no contractual duty to defend Tomlinson. Underwriters never refused to defend Tomlinson because Tomlinson never requested a defense from Underwriters. There is no evidence that Underwriters denied coverage during the state court proceeding, and Tomlinson never submitted a claim to Underwriters for the Plaintiffs' damages under Section C of the certificates. Nevertheless, Plaintiffs make two arguments to support their contention that Underwriters breached defense obligations to Tomlinson.

■ First, Plaintiffs argue that even without a contractual duty to defend, Underwriters can be held liable on the agreed judgment because they denied coverage and disclaimed liability, freeing Tomlinson to make a reasonable settlement that would be binding on Underwriters. *See Russ–Field Corp. v. Underwriters at Lloyd's*, 164 Cal.App.2d 83, 97–98, 330 P.2d 432, 440 (Ct.App.1958) (insurer with no contractual duty to defend was held liable under settlement made by insured after insurer had denied coverage). Plaintiffs interpret *Russ–Field* as binding an insurer that has no duty to defend to the insured's settlement if the insurer has denied coverage or liability, regardless of the language of the settlement agreement or of the policy. Plaintiffs disregard the distinction, however, that the terms of the settlement in *Russ–Field* fell within the policy coverage, but the terms of the agreed judgment in this case do not (since the provision relieving Tomlinson of liability conflicts with the insured's personal liability requirement of Section C). *See id.* Moreover, there is no evidence in the present case that Underwriters actually denied coverage prior to the entry of the agreed judgment in the state court action.

This court would unilaterally change the insurance policy's terms if it were to hold, as Plaintiffs urge, that an insurer with no contractual duty to defend was bound by a settlement falling outside policy coverage that it did not assist in negotiating. Such an insurer would be unable to rely on its policy provisions delineating coverage even though it had not done anything wrong.

Plaintiffs' second argument is that Tomlinson did not formally have to tender the defense to Underwriters or make a claim under the certificates for Underwriters to be liable under the agreed judgment. Tomlinson never specifically demanded or requested that Underwriters provide a defense in the state court action. Under the law of Mississippi, an insurer upon whom no demand to defend was made nevertheless can be held liable for claims settled by its insured, if the insurer had notice of the event potentially within policy coverage and of its legal responsibility to defend. *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 601 F.Supp. 286, 290 (S.D.Miss.1984) (insurer twice denied coverage to insured). It is undisputed that Underwriters had notice of the state court action against Tomlinson and even had a legal representative present at trial and at the pretrial conference. Plaintiffs urge that Underwriters' presence relieved Tomlinson of any duty of formal demand and that it is enough to show a breach of Underwriters' duty to defend.

Although Underwriters were fully aware of the state court action, they did not have notice of any legal responsibility to defend. Hartford conducted the entire defense. Neither Tomlinson nor Plaintiffs ever sought coverage or a defense from Underwriters for Plaintiffs' claims in the state court action. Instead, Tomlinson directed all of Plaintiffs' claims to Hartford.[2] The summary judgment evidence shows that Tomlinson took the position in the state court action that only the Hartford policies covered Plaintiffs' claims. Underwriters' presence at the pretrial conference and the trial indicates that they were aware their coverage might be implicated; however, their interest in following the ongoing proceedings does not imply an unwillingness to defend. Plaintiffs do not show how the presence of Underwriters at the trial obliged them to defend or made them liable under a settlement.

Plaintiffs maintain that Underwriters abandoned Tomlinson, thereby waiving

any objections they might have had to a settlement. As Underwriters observe, however, Tomlinson was not left unprotected, unlike the insured in *Coblentz,* 416 F.2d at 1063, since Hartford took charge of the defense and settlement negotiations pursuant to *its* contractual defense obligations.

Plaintiffs argue that the assumption of the defense by Hartford did not relieve Underwriters of their obligation to contribute to the settlement of claims under the policy. *See State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 255 So.2d 667 (Miss.1971) (insurer liable under settlement where it breached duty to defend and refused to contribute to settlement negotiated by other insurer); *Boutwell v. Employers' Liab. Assurance Corp.,* 175 F.2d 597, 600–01 (5th Cir.1949) (Mississippi law) (where counsel for the insurer failed and refused to defend, and was notified of the potential settlement but did not object to it or ask for more time to consider it, the insurer was liable under the settlement entered into by the insured). However, unlike the insurer in *Boutwell,* Underwriters was not notified of the settlement until it had already been executed; Underwriters did not have any input into the settlement negotiations at all.

This case seems more analogous to *Greenville Shipbuilding Corp. v. Hartford Accident & Indem. Co.,* 334 F.Supp. 1228 (N.D.Miss.1971), *aff'd,* 460 F.2d 1063 (5th Cir.1972). In *Greenville,* an insurer that did not refuse to defend an action and was not tendered the defense of any suit was not required to contribute to a settlement negotiated by another insurer. *Id.* at 1233. The insurer in *Greenville* was permitted to rely on policy provisions that made the settlement not binding on it, because the insurer never actually refused to defend the action pursuant to its contractual duty to defend, but rather investigated the accident while reserving its rights, and decided only after settlement had been reached by another insurer that the policy did not cover the claim. *Id.* at 1236. Underwriters' position in the present case is even stronger than the insurer's position in

---

**2.** Underwriters admit that Hartford requested their assistance in addressing Plaintiffs' claims;

however, this information was first revealed in post-trial discovery and is not in the record.

*Greenville,* because Underwriters did not have a contractual duty to defend.

As we find that Underwriters had no contractual duty to defend Tomlinson and did not refuse to defend Tomlinson or deny coverage to Tomlinson, we find it unnecessary to decide whether the allegations in Plaintiffs' state court complaint were within policy coverage such that if Underwriters had a duty to defend, they should have defended Tomlinson in state court.[3] In the absence of a duty to defend, Underwriters should be able to enforce the policy provisions that make the agreed judgment not binding on them, thereby avoiding liability.

Because we affirm the district court's grant of summary judgment in favor of Underwriters on the question whether Underwriters can be bound by the agreed judgment in the E.N. Ross Well Blowout Litigation, we must also affirm the denial of summary judgment to Plaintiffs on the same question.

AFFIRMED.

---

**3.** Under Mississippi law, a liability insurer has a duty to defend against particular claims if the allegations of the complaint bring the action under the policy coverage. *Southern Farm Bureau Casualty Ins. Co. v. Logan,* 238 Miss. 580, 588, 119 So.2d 268, 271 (1960). The district court, apparently proceeding under the assumption that Underwriters had a duty to defend, found that allegations that the blowout was proximately caused by violations of the Johns Field special field rules excluded Plaintiffs' claims from coverage under a policy exclusion for violations of government regulations. The court therefore concluded that Underwriters did not breach a duty to defend by not defending Tomlinson against those claims. We do not reach this issue.