894 F.2d 150
 58 USLW 2524, Fed. Sec. L. Rep. P 94,952
 L & B HOSPITAL VENTURES, INC., Leo J. Borrell, Bobby R.
Lowrance, Psychiatric Associates of Houston, P.A.,
and Douglas B. Hansen, Plaintiffs-Appellants,
v.
HEALTHCARE INTERNATIONAL, INC., West Oaks, Inc.,
Healthcare-Brown Management Co., the Brown
Schools, Inc., James L. Fariss, Jr.,
David L. Whelan and Elliott H.
Weir, Jr.,
Defendants-
Appellees.
 No. 89-2236.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 12, 1990.
 
 Philip P. Sudan, Jr., Jeffery T. Nobles, Ryan & Shoss, Houston, Tex., Paul V. Castellitto, V. Thomas Lankford, Sharp, Green & Lankford, Washington, D.C., for plaintiffs-appellants.
 Robert N. Brailas, Robin C. Gibbs, Gibbs & Ratliff, Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before DAVIS and SMITH, Circuit Judges, and LITTLE, District Judge.[1]
 LITTLE, District Judge:
 Believing they were bamboozled by the vendee-defendants, vendor-plaintiffs filed suit asserting, among other causes of action, relief under the Securities Exchange Act of 1934. 15 U.S.C. Sec. 78j. The properties which the plaintiffs owned and sold were limited partnership interests in West Oaks, The Psychiatric Institute of Houston, Ltd. The purchaser was the general partner.
 The defendants presented a very narrow issue in their motion for summary judgment. Stripped to its bare essentials, the motion asserts that there is no securities violation as that which was sold and purchased was not a security. The sellers were so inextricably intertwined in the partnership that they are not afforded the protection of the Securities Act. The trial court determined that there was no genuine issue of material fact and granted the defendants' motion, dismissed the plaintiffs' case with prejudice and dismissed the pendent state law claims without prejudice. Plaintiffs' appealed that decision. We REVERSE.
 Four physicians, each having a specialty in psychiatry, recognized a need for an inpatient treatment facility for adolescents and children in the Houston area (Tr. 779). The development of the project was discussed with plaintiffs by defendant James L. Fariss, Jr., an employee of co-defendant Brown Schools, Inc. A limited partnership agreement formed under the laws of Texas was signed in September of 1979; the limited partners were three psychiatrists (Hansen, Borrell and Lowrance) and one medical corporation (Psychiatric Associates of Houston, P.A.) whose members specialized in psychiatry. Each limited partner had a 6 1/4% interest in the partnership. The general partner was Brown Schools, Inc. which owned the remaining 75% interest. According to the physicians, Brown Schools, Inc. had expertise in hospital construction, management and operation.
 The nature of the impasse between the limited partners and the general partner is not material to this discussion. We need only observe that some discontent with the investment was the motivating force for plaintiffs to sell their limited partnership interests to the general partner, one of the defendants. The discontent burgeoned into allegations of fraud and deception when the plaintiffs discovered certain post-sale facts which are the basis of their complaint against the defendants.
 The standard of review which we follow is summarized in Jones v. Southern Marine & Aviation Underwriters, 888 F.2d 358, 360 (5th Cir.1989). The standard of review at the appellate level of a district court's grant or denial of summary judgment remains the same as at the trial court level. Ayo v. Johns-Manville Sales Corp., 771 F.2d 902, 904 (5th Cir.1985). For summary judgment to be granted, the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Under this standard, fact questions are considered with deference to the non-movant. Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir.1986). The appellate court decides questions of law, however, just as it decides questions of law outside the summary judgment context: de novo. Walker v. Sears, Roebuck & Co., 853 F.2d 355, 358 (5th Cir.1988); Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co., 832 F.2d 1358, 1364 (5th Cir.1987).
 The oft cited Celotex, interpreting Rule 56 of the Federal Rules of Civil Procedure, requires the entry of a summary judgment against the party failing to make a showing sufficient to establish the existence of an element essential to that party's case. Celotex, 477 U.S. at 322-24, 106 S.Ct. at 2552-53. In this case, the defendants claim that the plaintiffs do not belong to the class of investors to whom the Securities Act offers protection. There is no disagreement that the Securities Act applies to investment contracts and that, generally, investment contracts include limited partnership interests. Williamson v. Tucker, 645 F.2d 404, 423-24 (5th Cir.), cert. denied, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The Supreme Court crafted a definition of investment contract which forms the starting point for our analysis. In S.E.C. v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), an investment contract was defined as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." More recently, however, the Supreme Court has modified the definition of investment contract. In United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621, 632 (1975), the Supreme Court defined or restated investment contract as "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." This circuit has provided additional guidance in light of Howey and United Housing Foundation directing the benefits of the statute to investors in entities where the " 'efforts made by those other than the investor are undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise ' " (emphasis supplied). Williamson, 645 F.2d at 418 (quoting with approval Securities and Exchange Commission v. Glenn W. Turner Enterprises, Inc., 474 F.2d 476, 482 (9th Cir.), cert. denied, 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973)); see also Long v. Shultz Cattle Co., 881 F.2d 129, 133 (5th Cir.1989); Securities & Exchange Commission v. Koskot, Inc., 497 F.2d 473, 483 (5th Cir.1974).
 In ruling in defendants' favor, the trial court found as undisputed facts that the plaintiffs were actively involved in the hospital, contributed to its profitability and were crucial to its success. But the opinion recognizes that the medical acumen of the physicians was not the sole profit generating power unit. The thing needed a head, an operational manager, hence the general partner. The plaintiff limited partners had professional or clinical control but the defendants had managerial control. The trial court equated the professional medical involvement of the plaintiffs and their rights to perform as medical men with being "significant" within the Williamson case, Williamson, 645 F.2d at 422. The trial court concluded that:
 The plaintiffs have failed to "designate specific facts showing that there is a genuine issue for trial" and defendants are entitled to judgment as a matter of law.
 (Tr. 10). The Williamson case analyzed and classified the purchase of joint venture interests in a real estate holding enterprise in Texas. The plaintiffs claimed their interests were investment contracts and that the Securities Acts of 1933 and 1934 gave them status to file a federal suit. The defendants claim that the meaningful powers possessed by the plaintiffs under the joint venture agreements precluded a finding that the joint venture investments were investment contracts.
 In the lengthy and thoughtful opinion authored by Judge King, the following language sheds light on the law:
 So long as the investor retains ultimate control, he has the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager. It is not enough, therefore, that partners in fact rely on others for the management of their investment; a partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control.
 Williamson, 645 F.2d at 424. In this area of the law, the key is managerial efforts. In that connection the plaintiffs presented deposition evidence that they did not have nor in fact employ managerial capacity but were dependent upon the managerial activities exerted by the general partner. The evidence from the plaintiffs included the following:
 1. The limited partnership agreement between Brown Schools, Inc. (a subsidiary of defendant Healthcare International, Inc.) as general partner and physician plaintiffs, Douglas B. Hansen, Leo J. Borrell, Bobby R. Lowrance, Psychiatric Associates of Houston, as limited partners. That agreement sets forth the strictures on the limited partners' powers. That agreement, in part, provides that the limited partners do not have the capacity to participate in the management or control of the partnership nor are they capacitated to transact any business for the partnership. When it comes to management, ultimate and sole control is in the province of the general partner. The agreement also provides that the general partner has the exclusive authority to manage the operation and affairs of the partnership and to make all decisions regarding the business of the partnership, including determination of cash reserves, cash distributions, leasing of property, selling of property or refinancing (Tr. 550).
 2. Testimony of Leo J. Borrell that the defendants wanted to make sure that the plaintiffs remained limited partners and would not be involved in day-to-day operations. In fact, according to Borrell, the limited partners were informed by the general partners that the limited partners neither had the right nor the obligation, nor would they be allowed by the general partners, to participate in the hospital's day-to-day operations (Tr. 512).
 3. Testimony of Bobby R. Lowrance that, as a limited partner, he exercised no control over managerial decisions, expenses, capital expenditures, debt acquisition or payment, hiring or firing, nor did he have any control over access to the business or financial information concerning the operation of the partnership. The limited partner was dependent upon the managerial and financial expertise of the defendant Healthcare and only provided influence on patient care matters (Tr. 548-49).
 4. Testimony of Douglas B. Hansen that the managerial control of the partnership was undertaken by the general partner to the exclusion of the limited partners (Tr. 274-78).
 5. The Management Agreement dated 29 September 1979 between the general partner and the manager wherein all the specific operational duties are described (Tr. 588-613).
 6. A table of responsibility for hospital admissions for years 1982-1985. That table reveals the percentage of admissions for which each limited partner (plaintiff, excluding Douglas Hansen) was responsible. The figures could be read to reveal a rather meager contribution of patients to the total pool of admittees (Tr. 32).
 7. Testimony of Kay E. Peck, Administrator of the West Oaks Hospital, that she ran the hospital; that she and a vice president for defendant Healthcare handled the operations of the hospital, Healthcare being the general partner, which included contract matters, financial affairs, labor relations and employment fringe benefits. Basically, all administrative duties were handled through her as the designee of the general partner.
 In our opinion, there is evidence that plaintiffs never exerted nor had capacity to exert essential managerial efforts. There is evidence that essential managerial efforts of the entity were undertaken in fact and by contract by the defendants. Our findings that the plaintiffs have established specific facts showing a genuine issue for trial should not be interpreted as a finding in favor of the plaintiffs. All that we intended is to demonstrate that upon the documentation presented by the plaintiffs and in the light of existing law, the summary judgment should not have been granted. Accordingly, the judgment is REVERSED and the matter REMANDED.
 
 
 
 [1]
 District Judge of the Western District of Louisiana, sitting by designation