IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60201

Summary Calendar

_____


HERMITAGE INSURANCE COMPANY

                              Plaintiff - Appellee

v.

GEORGE BREWER; ET AL

                              Defendants

GEORGE BREWER; MALCOLM G GOODMAN

                              Defendants - Appellants

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:01-CV-9-BN
_____

December 30, 2002

Before KING, Chief Judge, and DEMOSS and BENAVIDES, Circuit

Judges.

PER CURIAM:[*]

     Defendants-Appellants George Brewer and Malcolm Goodman

appeal the district court's denial of their motion to dismiss,

denial of their motion for summary judgment, and grant of

_____

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Plaintiff-Appellee Hermitage Insurance Company's motion for summary judgment.  For the following reasons, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY

Roger Creger is the sole owner of Future Energy, Inc. ("Future Energy"), a corporation that assists utility companies with installation and maintenance of high-voltage electrical breakers.  Roger Creger obtained a general commercial liability insurance policy from Hermitage Insurance Company ("Hermitage"). The policy was purchased through the Association for Independent Managers and lists the Association for Independent Managers, Roger Creger, and several other individuals as named insureds. The policy does not name Future Energy or Randy Creger as insureds.[1]

Future Energy entered into a contract with Entergy Services, Inc. ("Entergy") to counsel Entergy on maintenance of electrical breakers.  According to the contract and its subsequent amendments, Future Energy was to offer advice on how maintenance should be performed and Entergy employees were to perform the

---

[1]    Section II of the policy explains who is considered an insured.  The policy states:
1.  If you are designated in the Declarations as:
     a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. . . .
2.  Each of the following is also an insured:
     a.  Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

actual physical maintenance on the breakers. Randy Creger, Roger's brother, was the Future Energy employee sent to consult to George Brewer and Malcolm Goodman, the Entergy employees who were to perform the maintenance. Randy Creger advised Brewer and Goodman to clean the breakers using denatured alcohol. When Brewer and Goodman followed these instructions, their alcohol-soaked rags burst into flames and they were severely injured.

Brewer and Goodman each brought suit in Mississippi state court against Randy Creger and Future Energy, alleging breach of contract and negligence and seeking punitive damages.[2] When Randy Creger and Future Energy submitted a claim to Hermitage, Hermitage denied coverage because neither was a named insured under the policy. Brewer and Goodman then amended their complaints to add Roger Creger and Hermitage as defendants. Hermitage denied coverage for Roger Creger's claim, citing the policy's professional liability exclusion.[3]

---

[2] Brewer's and Goodman's complaints are virtually identical.

[3] The professional liability exclusion reads:
EXCLUSION – ENGINEERS, ARCHITECTS[,] OR SURVEYORS PROFESSIONAL LIABILITY
. . .
This insurance does not apply to "bodily injury," "property damage," "personal injury[,]" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:
1. The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs[,] or specifications; and

Hermitage then filed suit in federal court against Brewer, Goodman, Roger and Randy Creger, and Future Energy. Hermitage sought a declaration that: (1) Randy Creger and Future Energy are not insureds under the policy, so that there is no coverage and no duty to defend the state-court suits with respect to them; (2) the professional services exclusion and the contractual liability exclusion bar coverage for the tort and contract claims against Roger Creger; and (3) the punitive damages endorsement bars an award of punitive damages to Brewer and Goodman.

Brewer and Goodman brought a motion to dismiss the federal suit based on the "first to file" rule and on principles of Brillhart abstention. The district court denied their motion. The district court determined that the "first to file" rule was only applicable when there are two federal-court proceedings, not a state-court proceeding and a federal-court proceeding. The district court also determined that Brillhart abstention was inappropriate because there was not a state-court proceeding that included all of the parties and all of the issues so that Hermitage could be subject to inconsistent verdicts in state court.

Brewer and Goodman then each settled his state-court claims against Roger Creger, Randy Creger, and Future Energy. By the

---

2.  Supervisory, inspection[,] or engineering services.

terms of the settlement, a $1,000,000 judgment was entered against Roger Creger, Randy Creger, and Future Energy. The settlement specifies that Brewer and Goodman may not seek payment from Roger Creger, Randy Creger, or Future Energy if it is determined that there is no coverage available under the Hermitage policy.

After some discovery in federal court, Hermitage filed a motion for summary judgment and Brewer and filed a cross-motion for summary judgment, which Roger Creger, Randy Creger, and Future Energy joined. The district court granted Hermitage's summary judgment motion and denied the federal-court defendants' summary judgment motion. Initially, the district court agreed with Hermitage that because the state-court case settled with the alleged insureds escaping liability, Hermitage no longer had a duty to provide coverage under the terms of the policy. Nonetheless, the district court found Hermitage could be bound by the state-court settlement agreement if it breached its duty to defend an insured. The district court determined that Hermitage did not breach its duty to defend Future Energy or Randy Creger because neither was an insured under the policy.[4] The district court found that Roger Creger was an insured, but that Hermitage

---

[4]    The district court also rejected Brewer's and Goodman's argument that Hermitage was bound to provide coverage for Randy Creger and Future Energy due to statements by Jack Winebrenner, who Brewer and Goodman claimed was a Hermitage agent.

did not breach its duty to defend Roger Creger because the contractual liability exclusion barred coverage for Brewer's and Goodman's breach-of-contract claims, the professional liability exclusion barred coverage for Brewer's and Goodman's negligence claims, and the punitive damages endorsement barred coverage for punitive damages.

Hermitage and Brewer appeal.[5] They claim that the district court erred in refusing to dismiss the federal-court case, in denying their motion for summary judgment, and in granting Hermitage's motion for summary judgment. Specifically, they argue: (1) Brillhart abstention is appropriate; (2) Randy Creger and Future Energy are insureds under the policy; (3) the state-court settlement absolving the insureds of personal liability does not bar coverage; and (4) the professional services exclusion does not bar coverage.

## II. STANDARD OF REVIEW

This court reviews a district court's decision whether to stay proceedings for an abuse of discretion. E.g., Wilton v. Seven Falls Co., 515 U.S. 277, 288-89 (1995); Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 649 (5th Cir. 2000). We have previously noted that "[a] district court has broad discretion to retain or dismiss a declaratory judgment suit where

---

[5] Randy Creger, Roger Creger, and Future Energy do not appeal.

a parallel state court suit has been filed." Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 84 (5th Cir. 1997).

We review a grant of summary judgment de novo, applying the same standards as the district court. Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir.), cert. denied, 122 S. Ct. 347 (2001). Summary judgment should be granted if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In determining if there is a genuine issue of material fact, the court reviews the evidence in the light most favorable to the non-moving party. Daniels, 246 F.3d at 502.

This is a diversity case and the parties agree that Mississippi insurance law applies. We review a district court's interpretation of an insurance contract under Mississippi law de novo. Mulberry Square Prods., Inc. v. State Farm Fire & Cas. Co., 101 F.3d 414, 420 (5th Cir. 1996). Under Mississippi law, "where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written." Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 382 (5th Cir. 1998). If the terms of a policy are

ambiguous, we interpret them in favor of the insured. Id. at
382-83.

### III. DISCUSSION

### A. Motion to Dismiss Based on Brillhart Abstention

As a threshold matter, we consider whether the district
court abused its discretion in refusing to dismiss the federal
declaratory-judgment action based on principles of Brillhart
abstention. In Brillhart v. Excess Insurance Co. of America, the
Supreme Court determined that abstention in a federal-declaratory
judgment suit may be appropriate when there is a pending state-
court proceeding. See 316 U.S. 491, 494-97 (1942). The Court
explained that the district court "should ascertain whether the
questions in controversy between the parties to the federal suit
. . . can be better settled in the proceeding pending in the
state court." Id. at 495. In making this determination, the
district court should consider "whether the claims of all parties
in interest can satisfactorily be adjudicated in that [state-
court] proceeding, whether necessary parties have been joined,
whether such parties are amenable to process in that proceeding,
etc." Id. The Fifth Circuit has added other factors to
Brillhart list, including: whether the plaintiff filed suit in
anticipation of a lawsuit filed by the defendant; whether the
plaintiff engaged in forum shopping; whether inequities exist in
allowing the plaintiff to gain precedence in time or change

forums; whether a federal forum is more convenient for parties and witnesses; and whether retaining federal jurisdiction would promote judicial economy. <u>Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.</u>, 996 F.2d 774, 778 (5th Cir. 1993).

The district court reviewed the <u>Brillhart</u> factors and determined that abstention was unwarranted. We find no abuse of discretion in its decision. At the time of the motion to dismiss, the state actions did not include the same parties as the federal action. Though Hermitage had been served in the <u>Brewer</u> suit, it had not been served in the <u>Goodman</u> suit, despite the fact that it had been added as a defendant almost two years prior.[6] Further, as the district court correctly noted, there were two lawsuits pending against Hermitage in state court based on identical facts and identical legal arguments, which exposed Hermitage to the possibility of inconsistent judgments.[7] Finally, Hermitage does not appear to have been forum shopping in

---

[6] Brewer and Goodman base a large part of their argument that abstention is appropriate on the fact that Hermitage was eventually served in the state-court <u>Goodman</u> litigation. First, Brewer and Goodman apparently never brought this fact to the district court's attention, and this fact is not in the record on appeal, so it should not be considered. <u>See, e.g.</u>, <u>Kemlon Prods. & Dev. Co. v. United States</u>, 646 F.2d 223, 224 (5th Cir. 1981). Second, even if Hermitage had been served in both cases, there is still the risk of inconsistent verdicts, so that the district court did not abuse its discretion in refusing to abstain.

[7] Though Brewer and Goodman allege that the parties agreed to consolidate the state-court actions, there is no evidence that the two state-court suits were ever joined.

coming to federal court; rather, it wished to resolve an issue that had been pending in state court for two years. Though the state-court suits contained the same issues as the federal suit and dealt exclusively with state law, the district court properly weighed the factors for and against abstention and determined that it need not dismiss this action.

**B.   Summary Judgment Motions**

We next consider whether the district court erred in granting Hermitage's motion for summary judgment and denying Brewer and Goodman's motion for summary judgment. Because the material facts are undisputed, we are called upon to construe the meaning of the Hermitage policy as a matter of law.

Before we construe the terms of the policy, we must consider whether the settlement agreement and consent judgment in state court preclude a finding of liability against Hermitage. Brewer and Goodman argue that the district court erred in determining that because the state-court settlement absolves all alleged insureds of personal liability, Hermitage has no liability for coverage. The district court did not err. According to the policy, Hermitage "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which insurance applies." The Settlement Agreement states that Roger Creger, Randy Creger, and Future Energy are not personally liable for the settlement amount in the

event that there is no coverage under the Hermitage policy.[8] We have previously encountered this situation. In Jones v. Southern Marine & Aviation Underwriters, Inc., we held that under Mississippi law, when personal liability of an insured is a condition of coverage and the insured is not personally liable under a settlement agreement, the insurer is not obligated to pay third-party victims under the settlement agreement.[9] See 888 F.2d 358, 361 (5th Cir. 1989); see also Putman v. Ins. Co. of N. Am., 673 F. Supp. 171, 177 (N.D. Miss. 1987), aff'd, 845 F.2d 1020 (5th Cir. 1988) (under Mississippi law, an agreement that removed personal liability of insured over a set amount also

---

[8]     The settlement agreement states that Future Energy, Roger Creger, and Randy Creger
>     agree[] to accept[] a settlement of these actions with
>     plaintiffs for the One Million Dollars ($1,000,000.00)
>     in liability limits under the Hermitage Policy.  In
>     exchange for this agreement, plaintiffs will not seek
>     to recover from Future Energy, Inc., Roger Creger[,]
>     and Randy Creger, any of the funds dedicated to payment
>     under this Settlement Agreement in the event of a final
>     adjudication that coverage does not exist under the
>     Hermitage Policy.

[9]     Jones is factually similar to this case.  The Jones plaintiffs settled their state-court suit with the insured and one insurance company, but a second insurance company, Underwriters, did not participate in the settlement negotiations or consent to the settlement agreement.  See 888 F.2d at 359-61. We found that because personal liability was a condition precedent to coverage, Underwriters was not liable to pay the settlement amount, even if there was coverage under the policy. See id. at 361-62.  We then noted that "[t]he only circumstance in which Underwriters can be bound by the agreed judgment" is if it waived its right to rely on the policy condition because it breached a duty to its insured, such as the duty to defend.  Id.

removed obligation of the insurer to pay because the insurance policy provided coverage only if the insured was liable). Roger Creger, Randy Creger, and Future Energy are not "legally obligated to pay" any sum, so the district court correctly found that under the terms of the policy, Hermitage cannot be found liable for coverage.

Brewer and Goodman argue that Hermitage may nonetheless be liable for the settlement amount if Hermitage breached its duty to defend. The district court agreed. The district court was correct, for under Mississippi law, "when an insurer breaches its duty to defend an insured, the insurer is liable and bound by any settlement agreements made by the insured as a result of this breach."[10] Miss. Ins. Guaranty Ass'n v. Byars, 614 So. 2d 959, 964 (Miss. 1993); see also Jones, 888 F.2d at 362. An insurer that breaches its duty to defend may be found liable for a settlement even if the settlement absolves the insured of personal liability.[11] See Jones, 888 F.2d at 362.

---

[10] We have further explained that under Mississippi law, an insurer that breached its duty to defend will be liable for any settlement agreement up to the policy limits, but will not be liable for settlement costs or other consequential damages. See Liberty Mut. Fire Ins. Co. v. Canal Ins. Co., 177 F.3d 326, 336-39 (5th Cir. 1999). Brewer and Goodman only claim coverage up to the policy limits in this case.

[11] Hermitage argues that under Mississippi law, an insurer may not waive a condition that relates to policy coverage and the policy in this case conditions coverage on an insured's personal liability. Hermitage is correct that under Mississippi law, conditions impacting coverage generally may not be waived by

An insurer has a duty to defend if the pleadings in a lawsuit against an insured arguably state facts that bring the claimed injury within the policy coverage. See Mulberry Square Prods., 101 F.3d at 421. "Ultimate liability by the insurer is not dispositive of its duty to defend. . . . [T]he insurer has a duty to defend when there is any basis for potential liability under the policy." Merchants Co. v. Am. Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992).

### 1. Duty to Defend Randy Creger and Future Energy

We now consider whether Hermitage breached its duty to defend Randy Creger and Future Energy. Brewer and Goodman contend that the district court erred in finding that Randy Creger and Future Energy are not insureds under the Hermitage policy. The district court found that Randy Creger is not an insured because he is not one of Roger Creger's employees. The district court also found that Future Energy was not an insured under the policy because the policy only extends to Roger Creger and Future Energy is a separate legal entity. We agree.

The insurance policy lists, as named insureds, the Association for Independent Managers and twenty-three

---

implication. See, e.g., Yazoo County v. Int'l Surplus Lines Ins. Co., 616 F. Supp. 153, 156 (S.D. Miss. 1985). Yet, we have specifically held that under Mississippi law, an insurer waives a policy condition requiring personal liability when it breaches its duty to defend. See Jones, 888 F.2d at 361-62. Hermitage's argument is thus without merit.

individuals, including Roger Creger, who were added by endorsement.  Randy Creger and Future Energy are not named anywhere in the policy.

Brewer and Goodman argue that Future Energy is an insured under the policy because coverage extends to businesses that are solely owned by an insured.  The policy states: "If you are designated in the Declarations as[] [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner."  Brewer and Goodman read this language to say that both Roger Creger and any business over which he is the sole owner are insureds.  Yet, the policy language clearly states that Roger Creger is the insured and he is only covered for activities relating to his wholly-owned business.  Future Energy is not itself an insured; claims against Future Energy, a separate legal entity, are not covered under the policy.

Brewer and Goodman argue that Randy Creger is covered by the policy because he is an employee of Roger Creger.  The policy states that coverage extends to "[y]our employees . . . but only for acts within the scope of their employment . . ."  The state-court complaints refer to Randy Creger as an employee of Future Energy, not of Roger Creger.  Further, the only evidence on whether Randy Creger was an employee of Roger Creger was Randy Creger's testimony, in which he stated that he was an employee of

Future Energy, not Roger Creger. Future Energy is not an insured, so Randy Creger is not covered by the policy.[12] Thus, the district court correctly found that there was no breach of the duty to defend with respect to Randy Creger and Future Energy.

### 2. Duty to Defend Roger Creger

Finally, we consider whether Hermitage breached its duty to defend Roger Creger. The parties agree that Roger Creger is an insured under the policy. The parties disagree as to whether the policy's professional services exclusion bars coverage in this case.[13] The exclusion makes coverage inapplicable to claims "arising out of the rendering or failure to render any professional services" including "[s]upervisory, inspection or engineering services." The district court found that the professional services exclusion bars coverage because all of the claims arise out of services Roger Creger, Randy Creger, and Future Energy provided that required specialized skill and expertise. We agree.

Under Mississippi law, a "professional service" is one

---

[12]    Because Roger Creger was not Randy Creger's employer, we need not consider whether Randy Creger was acting within the scope of his employment.

[13]    Brewer and Goodman do not argue on appeal that there is coverage for the breach-of-contract or punitive damages claims. Thus, the only issue remaining is whether the professional services exclusion bars the negligence claim against Roger Creger.

"arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominately mental or intellectual, rather than physical or manual."  Burton v. Choctow County, 730 So. 2d 1, 5-6 (Miss. 1997); see also Titan Indem. Co. v. Williams, 743 So. 2d 1020, 1025-26 (Miss. Ct. App. 1999).  In determining whether an act is of a professional nature, Mississippi courts "look not to the title or character of the party performing the act but to the act itself."  Burton, 730 So. 2d at 7 (quoting Marx v. Hartford Accident & Indem. Co., 157 N.W.2d 870, 872 (Neb. 1968)).

Whether a claim arises from a professional service is determined from the allegations in Brewer's and Goodman's state-court complaints.  The complaints allege that Roger Creger was himself negligent and that he is responsible for Randy Creger's negligence through the doctrine of respondeat superior.  Because we found that Future Energy, not Roger Creger, was Randy Creger's employer, Roger Creger likely is not liable for Randy Creger's torts.  Nonetheless, we will consider whether claims against both Roger and Randy Creger were due to injuries caused during the performance of professional services.

The complaints state that Future Energy, Roger Creger, and Randy Creger, based on their "skill, training[,] and expertise, had a duty to design a safe cleaning product to be used" and that

they are liable for their "failure to designate a safe cleaning solvent," "failure to exercise ordinary care based on [their] expertise and training, to know that the denatured alcohol was inappropriate," "failure to warn Plaintiff of the dangers of the use of the denatured alcohol," "failure to foresee that the denatured alcohol was subject to sparking," "failure to supervise the work with proper safety," and "failure to follow proper electrical safety practices." All of the allegations relate to decisions the defendants made based on their expertise in handling high-voltage breakers. The complaints do not allege negligence based on what a reasonable person would have done under the circumstances.

Further, the claims arise out of the Future Energy-Entergy contract, in which Future Energy agreed to furnish consulting services to Entergy and Entergy agreed to have its employees perform physical maintenance on the breakers.[14] The basis for

---

[14] In their state-court complaints, Brewer and Goodman characterize the contract as one "for the supervision and expertise required in overhauling Entergy's 500,000 volt electrical breakers" and state that the contract required a on-site Future Energy consultant to "provid[e] instructions to the employees of Entergy as to the construction work[] [and] to ascertain and assure that the construction work was progressing in strict accordance with the plans and specifications of such work on such a hazardous activity." The complaints also state, "Under said contractual arrangement and agreement, the Defendant Future [Energy], through its agent and employee in the capacity of Field Service Engineer, Defendant Randy Creger, designated supplies, supervised[,] and instructed the employees of Energy in the repairs of said breakers."

the contract is that Future Energy has specialized expertise about high-voltage electrical breakers that even Entergy, a utility company, did not have.  The fact that specialized expertise was essential to the performance of the contract shows that the contract was for "professional services."  See Burton, 730 So. 2d at 7-8 (finding that activities a layperson could perform without special training, such as bathing another person, are not "professional services"); cf. Thermo Terratech v. GDC Enviro-Solutions, Inc., 265 F.3d 329, 336 (5th Cir. 2001) (finding that under Louisiana insurance law, an act that could have been done by an unskilled or untrained employee is not a "professional service").  Roger Creger, Randy Creger, and Future Energy were responsible for giving advice on how maintenance should be done; they were not hired to actually do the maintenance.  See Cochran v. B.J. Servs. Co. USA, 302 F.3d 499, 507 (5th Cir. 2002) (holding, under Louisiana law, that a contract that did not "provide[] any instruction, specialized or otherwise, to contractors on how to accomplish any particular job" was not a contract for "professional services").  All of the activities that Brewer and Goodman allege Roger Creger negligently performed or was responsible for another performing are thus "professional services."

Brewer and Goodman contend that Roger Creger and Randy Creger could not offer "professional services" because they do

not have advanced degrees. Under Mississippi law, though, a person is not required to have formal training before he can render a "professional service." See Burton, 730 So. 2d at 8. Rather, a person need only have specialized expertise or skill that is predominantly mental or intellectual. See Burton, 730 So. 2d at 5-6. There is ample testimony that Roger Creger and Randy Creger developed years of on-the-job experience to become experts in handling electrical breakers. Indeed, the state-court complaints consistently refer to Roger Creger and Randy Creger as experts.[15]

Brewer and Goodman argue that the professional services exclusion is ambiguous because the title of the exclusion suggests that it only applies to engineers, architects, or surveyors, while the text of the exclusion is more broad, and that this ambiguity should be resolved in their favor. The mere

---

[15] For example, the complaints state that:
Randy Creger[] held himself out to Plaintiff to be an expert in this field and has specialized knowledge of high[-]voltage electrical breaker repairs and the associated activity thereof. . . .
Randy Creger knew, or by the nature of his training and expertise, should have known that the denatured alcohol which he specifically designated for Plaintiff to use in the cleaning of the breaker had a flashpoint of 54 degrees and that the static electricity of the heavy voltage nearby was subject to sparking and flaming up said alcohol. . . .
Defendants, based upon their skill, training[,] and expertise, had a duty to design[ate] a safe cleaning product to be used for such cleaning adjacent to high voltage lines.

fact that the parties disagree about the meaning of a provision does not make the provision ambiguous. <u>Burton</u>, 730 So. 2d at 6. The term "professional services" has a well-defined meaning under Mississippi law. See <u>Burton</u>, 730 So. 2d at 5-6 (Miss. 1997) (adopting definition used by several other states); <u>Shelton v. Am. Ins. Co.</u>, 507 So. 2d 894, 896 (Miss. 1987). Further, while the exclusion's title refers only to "engineers, architects, and surveyors," the language of the exclusion clearly refers to all "professional services," including, but not limited to, activities such as engineering and surveying. See <u>Winter Garden Ornamental Nursery, Inc. v. Cappleman</u>, 201 So. 2d 479, 480 (Fla. Ct. App. 1967) (stating the "general rule" that while a caption may be used to explain an ambiguity in the "operative part of the clause," it should not be used to "create ambiguity where none exists"). Many courts have considered the exact language at issue here and have concluded that the exclusion is not limited to engineering, architectural, and surveying services. See, e.g., <u>Cochran</u>, 302 F.3d at 502-08 (interpreting Louisiana law); <u>Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.</u>, 126 F.3d 886, 892-93 (7th Cir. 1997) (interpreting Illinois law); <u>Harbor Ins. Co. v. OMNI Constr., Inc.</u>, 912 F.2d 1520, 1522-25 (D.C. Cir. 1990) (interpreting District of Columbia law). The exclusion is not ambiguous.

Finally, Brewer and Goodman suggest that the policy coverage

is illusory if the professional services exclusion applies in this case.  Though the exclusion bars coverage for claims arising from bad consulting advice, it does not bar coverage for other claims arising from Roger Creger's business operations, such as claims for personal injuries on business premises or property damage to business premises.  See Prisco Serena Sturm Architects, 126 F.3d at 893 (explaining the difference between comprehensive general liability coverage and professional liability coverage in a case with facts similar to this one).  Brewer and Goodman also cite evidence that Roger Creger and Entergy believed the Hermitage policy was sufficient to cover any claims arising out of Future Energy's contract with Entergy.  Roger Creger's and Entergy's beliefs are insufficient to show coverage when there is no coverage under the policy's terms.  The district court did not err in finding that the professional services exclusion bars claims against Roger Creger so that Hermitage did not breach its duty to defend him.

**IV. CONCLUSION**

For the foregoing reasons, the district court's denial of Brewer's and Goodman's motion to dismiss and motion for summary judgment and grant of Hermitage's motion for summary judgment are AFFIRMED.