# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01250-SCT

*PROGRESSIVE GULF INSURANCE COMPANY*

*v.*

*DICKERSON AND BOWEN, INC., AND*
*TRAVELERS INDEMNITY COMPANY OF*
*ILLINOIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/28/2006 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CECIL MAISON HEIDELBERG |
| ATTORNEYS FOR APPELLEES: | JENNIFER W. YARBOROUGH |
| | JOHN STEPHEN GRAHAM |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND RENDERED - 10/04/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1.    This appeal involves litigation between two insurance companies on the issue of

indemnification and stems from prior litigation which resulted in a jury verdict and a

subsequent settlement.  Detailed facts of the prior litigation and the jury's verdict are not

before this Court, but the prior litigation will be discussed briefly in the facts to provide insight.[1]

¶2.    On January 13, 1999, in the Circuit Court of Holmes County, Mississippi, Leola Cooper (Cooper) filed a lawsuit against Billy Carey (Carey) for his negligent driving which resulted in her injury.  Cooper amended her complaint on December 22, 2000, adding Dickerson & Bowen, Inc. (D&B) as a defendant.  On November 22, 2001, Progressive Gulf Insurance Company (Progressive) settled on behalf of Carey, leaving D&B as the sole defendant.  D&B went to trial, and the jury rendered a $2.5 million verdict in favor of Cooper.  D&B did not appeal the verdict.  Travelers Indemnity Company of Illinois (Travelers), D&B's liability insurance carrier, settled with Cooper for $250,000 to satisfy the judgment against D&B.

¶3.    On November 20, 2003, Travelers filed suit against Progressive alleging that Progressive breached its duty to defend D&B.  Travelers demanded indemnification for the settlement Travelers paid to Cooper, $250,000.  Travelers moved for summary judgment and Progressive filed a cross-motion, also for summary judgment.  The trial court granted Travelers' motion for summary judgment, basing its decision on the jury's finding that D&B was vicariously liable and, thus, insured under Carey's Progressive policy.

---

[1]  The record in this appeal does not contain a complete record of the prior litigation, *Cooper v. Carey, Dickerson Bowen Co., and John Does I-V*, civil action no. 99-0006, Circuit Court of Holmes County, Mississippi.

¶4.     On June 28, 2006, a final judgment was entered against Progressive for Travelers' settlement amount of $250,000, plus costs and fees of $49,529.83, for a total of judgment of $299,529.83.  Progressive now appeals to this Court.

**FACTS**

¶5.     On September 11, 1998, Cooper was injured in an automobile accident when Carey's vehicle, driven by Carey, collided with Cooper's vehicle.  On January 13, 1999, Cooper filed suit against Carey and D&B, Carey's alleged employer.  Carey was defended by Progressive.  On December 22, 2000, D&B was joined as a defendant in Cooper's amended complaint.  D&B was defended by Travelers.  Prior to trial, and under Carey's commercial vehicle policy held by Progressive, Progressive settled on Carey's behalf, leaving D&B and Cooper as the remaining litigants.  Throughout the litigation, D&B maintained in its defense that Carey was an independent contractor, thereby disavowing Progressive's responsibility.  The jury returned a verdict against D&B in the amount of $2.5 million.  This was announced in special verdict form submitted by D&B's counsel with the following:

1.     Was Billy Carey negligent? Yes.
2.     If the Answer to No. 1 was "yes," what was his percentage of fault? 10%.
3.     Was Dickerson & Bowen negligent? Yes.
4.     If the answer to No. 3 was "yes," what was its percentage of fault? 90%.

¶6.      D&B maintained throughout, and until the jury verdict was rendered against D&B, that Carey was an independent contractor.  D&B never made a demand for Progressive to defend it.  Before Travelers settled with Cooper, and after reviewing Carey's policy with

3

Progressive, Travelers sent the final judgment against D&B for $2.5 million and Cooper's $450,000 settlement demand to Progressive. At this point, *after* the trial, Travelers requested that Progressive defend D&B based on its policy with Carey. On June 10, 2002, Progressive refused the request to defend D&B or indemnify Travelers. Travelers then settled the $2.5 million judgment against D&B for $250,000.

## DISCUSSION

¶7.     Progressive contends that the trial court improperly granted summary judgment in favor of Travelers. Progressive asserts that D&B waived any right of defense or indemnity from Progressive as a result of non-compliance with Progressive's policy requirements that were a condition precedent to coverage. Progressive further argues that as a result of D&B's lack of a timely demand to defend or to provide coverage, D&B waived any right to coverage and to indemnification of Travelers for the settlement that Travelers negotiated with Cooper. Progressive had no involvement in the representation of D&B or the settlement of the judgment against D&B.

¶8.     In reviewing a trial court's ruling on a motion for summary judgment, this Court conducts a de novo review and "examines all the evidentiary matters before us, including admissions in pleadings, answers to interrogatories, depositions, and affidavits." *Price v. Purdue Pharma Co.,* 920 So. 2d 479, 483 (Miss. 2006) (citing *Aetna Cas. & Sur. Co. v. Berry,* 669 So. 2d 56, 70 (Miss. 1996), *overruled in part on other grounds*, *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So. 2d 1065, 1074 (Miss. 2005)). "The evidence must be viewed in the light most favorable to the party against whom the motion has been made."

4

*Price*, 920 So. 2d at 483 (citing *Berry,* 669 So. 2d at 70). "The moving party has the burden of demonstrating that a genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact." *Howard v. City of Biloxi,* 943 So. 2d 751, 754 (Miss. 2006) (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (Miss. 2001)). To avoid summary judgment, the non-movant must set forth specific facts that demonstrate a genuine issue of material fact that merits trial instead of mere unsubstantiated allegations. *Richmond v. Benchmark Constr. Corp*., 692 So. 2d 60, 61 (Miss. 1997).

¶9.    Progressive's policy provided the following pertinent duties in case of an accident or loss as a condition precedent to coverage:

**Notice of Accident or Loss**

In the event of an **accident** or **loss**, report it to **us** as soon as practicable . . .

**Other Duties**

Any person claiming coverage under this Policy must:

1.    cooperate with and assist **us** in any matter concerning a claim or lawsuit;
2.    provide any sworn or written proof of **loss** that **we** require before payment of a **loss**;
3.    provide us with signed or recorded statements under oath as often as **we** may reasonably require;
4.    promptly send **us** any and all legal papers received relating to any claim of lawsuit;
5.    attend hearings and trials as **we** require;

    . . .

5

9. provide **us** with written notice of any legal action which such person has undertaken in regard to the **accident** for which coverage is sought;

10. assume no obligation, make no payment or incur no expense without **our** consent, except at **your** own cost; . . .

¶10. Carey's policy with Progressive contained a provision that covered vicarious liability for Carey's negligence while driving the insured vehicle. The policy defined an "insured" under number 4 of the policy as: "Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered . . . while driving your insured auto."

¶11. However, D&B never requested any coverage from Progressive. D&B never made any demand for Progressive to defend it. Instead, D&B was represented and defended by its general liability insurer, Travelers, at all stages of the litigation proceedings. D&B contended that Carey was not an employee of D&B. D&B maintained, at all times, that Carey was an independent contractor. Carey had his own commercial insurance policy with Progressive. Progressive settled Cooper's lawsuit against Carey. Once Carey was released from the litigation, Progressive had no further involvement in the litigation.

¶12. D&B did not settle with Cooper, maintaining that Carey was an independent contractor, and therefore, it was not liable to Cooper. Travelers represented D&B through all these proceedings and furnished D&B legal representation. Progressive was not involved in D&B's representation or legal decision to proceed to trial.

¶13. D&B made no request to Progressive for coverage until *after* D&B went to trial and received a jury verdict against D&B. After the verdict was rendered against D&B, Travelers

6

did not appeal the judgment. Instead, Travelers negotiated a settlement on behalf of D&B, and Travelers paid the $250,000 to satisfy the judgment rendered against D&B.

¶14. Progressive was not involved in the decision to go to trial, the trial proceedings, or the decision to settle the judgment in lieu of appealing it. Provisions number 9 and 10 of Progressive's policy specifically stated the duty of the insured to:

> 9. provide **us** with written notice of any legal action which such person has undertaken in regard to the **accident** for which coverage is sought; and
>
> 10. assume no obligation, make no payment or incur no expense without **our** consent, except at **your** own cost.

¶15. "Because the insurer must eventually pay whatever sums the insured becomes legally obligated to pay, the insurance carrier has the right to select the attorney retained to defend the claim." ***Moeller, et al. v. American Guar. and Liab. Ins. Co.***, 707 So. 2d 1062, 1068 (Miss. 1996) (citing ***Hartford Acc. & Idem. Co. v. Foster***, 528 So. 2d 255, 263 (Miss. 1988)). "Where the language of an insurance contract is clear and unambiguous it is not construed in favor of the insured but is construed as written." ***Lowery v. Guar. Bank & Trust Co.***, 592 So. 2d 79, 82 (Miss. 1991) (citing ***State Farm Mut. Auto Ins. Co. v. Gregg***, 526 So. 2d 554, 556 (Miss. 1988); ***Ford v. Lamar Life Ins. Co.***, 513 So. 2d 880 (1987)). This Court has held:

> The interpretation of an insurance policy is a question of law, not one of fact. ***Lewis v. Allstate Ins. Co.***, 730 So. 2d 65, 68 (Miss. 1998) (citing ***Johnson v. Preferred Risk Auto. Ins. Co.***, 659 So. 2d 866, 871 (Miss. 1995)). Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. ***Paul Revere Life Ins. Co. v. Prince***, 375 So. 2d 417,

7

418 (Miss. 1979). Under Mississippi law, ambiguous and unclear policy language must be resolved in favor of the non-drafting party -- the insured. *Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092, 1094 (Miss. 1995). Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994).

*Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004);

*See also **Anglin v. Gulf Guar. Life Ins. Co.***, 2007 Miss. LEXIS 224, 15-16 (Miss. 2007).

¶16. Clearly, D&B did not comply with the requirements for coverage stated in Progressive's policy. In fact, besides never making any demand on Progressive for coverage as required, at no time prior to the verdict did Travelers or D&B ever request a copy of Progressive's policy to see if coverage was available. It was not until the judgment was already rendered against D&B that Travelers requested a copy of the Progressive policy and made a demand for Progressive to satisfy the judgment. There is no dispute that D&B did not comply with the conditions precedent specifically stated in the Progressive policy.

¶17. Travelers argues on appeal that the amended complaint added D&B as a party defendant solely under a theory of vicarious liability. While that is not completely incorrect, it is also not completely accurate. The amended complaint actually provided in pertinent part:

3. Defendant, Billy Carey, at all times relevant herein was in the enlargement [sic] of and/or acting as the agent of the defendant, Dickerson Bowen Company, although he claims to be an ***independent contractor***.

4. Defendant, Dickerson Bowen Company, is liable for the negligent acts of the defendant[,] Billy Carey.

8

. . .

    10.    Defendant, Dickerson Bowen Company, *should be held joint and severally liable **and/or** vicariously liable* for the damages caused by its quasi-agent, under the doctrine of respondeat superior.

(Emphasis added). Upon reading the quoted section of the amended compliant, specifically subsection 10 of the amended complaint, Cooper did not sue D&B solely under a theory of respondeat superior or vicarious liability as Travelers contends on appeal. In response to Cooper's allegations, D&B maintained that Carey was an independent contractor, not its employee. D&B never had its legal counsel, which was furnished by Travelers, pursue any coverage under Carey's policy with Progressive.

¶18. Here, D&B did not request or demand coverage under Carey's policy with Progressive; however, the trial court determined that Progressive was obligated to indemnify the amount of the settlement, $250,000, and attorney's fees and costs, $49,529.83, for a total amount of $299,529.83, negotiated and paid by Travelers's to satisfy the $2.5 million judgment against D&B. Travelers argues that an insurer can be held liable for claims settled by its insured, if the insurer had knowledge of the claims against its insured, even if its insured never made a demand to defend. In ***State Farm Mutual Automobile Insurance Co. v. Commercial Union Insurance Co.***, 394 So. 2d 890, 893 (Miss. 1981), this Court held:

> Although there is authority to the contrary, we believe the better view is to hold that unless some prejudice is shown by an insured's failure to cooperate with the insurance carrier in its investigation, **such failure does not operate to forfeit the insured's rights under the policy**. *See*: ***United States Casualty Co. v. Schlein***, 338 F.2d 169, [sic] (5th Cir. 1964); ***Clemmer v. Hartford Ins. Co.,*** 22 Cal. 3d 865, 151 Cal. Rptr. 285, 587 P. 2d 1098 (1978); ***Ramos v. Northwestern Mutual Ins. Co.***, 336 So. 2d 71 (Fla. 1976); ***MFA Mutual***

9

*Insurance Co. v. Sailors*, 180 Neb. 201, 141 N.W. 2d 846 (1966). [sic] 7A Am Jur 2d Automobile Insurance § 405 (1980); 14 G. Couch, Cyclopedia of Insurance Law § 51:112 (2d ed. 1965); which states failure to cooperate cannot constitute a breach unless shown to be prejudicial; J. Appleman, Automobile Liability Insurance 261 (1938).

(Emphasis added).

¶19. It is important to examine the complex set of facts in *State Farm Mutual Automobile Insurance Co.* in order to understand the Court's holding. In that case, Keith Alexander operated a car furnished by Jimmy Smith Chevrolet, Inc., which maintained liability insurance on the car through Commercial Union. *State Farm Mut. Auto. Ins. Co.*, 394 So. 2d at 891. Alexander's aunt Merle Arnold was a passenger in the car, and Alexander and his aunt were injured in the accident when the car collided with an Illinois Central Gulf Railroad Company train. *Id*. Alexander's parents carried a liability policy with State Farm that covered Keith. *Id.* The following transpired as a result of the accident:

> In May 1974 the law firm of Reeves and Reeves was employed by Keith and his parents to represent his interest for personal injuries received in the accident.
>
> Commercial Union's adjustor, Joe King, contacted Keith by telephone a day or two following the accident and was told where he could be reached in McComb to discuss the case. Upon arriving in McComb and attempting to contact Keith, however, King was informed by Mrs. Georgia Alexander that her son had retained attorney R. B. Reeves to represent him, and that Keith would not give a statement unless his attorney was present. King then sought through attorney Reeves to get a statement, but because of Reeves procrastination his efforts were unsuccessful.
>
> On February 14, 1975, Mrs. Merle Arnold filed suit in Cause Number 3240 in the Circuit Court of Pike County, naming Keith, his parents, the Illinois Central Gulf Railroad Company and Jimmy Smith Chevrolet, Inc., as defendants.

10

On March 13, 1975, Keith filed suit in Cause Number 3241 of the Circuit Court of Pike County, naming the railroad company and Jimmy Smith Chevrolet, Inc. as defendants.

Both suits charged the automobile agency with negligently furnishing a defective car, which was a contributing cause of the accident. Jimmy Smith Chevrolet, Inc., in Cause Number 3241 filed a counterclaim against Keith for negligently operating the car, resulting in property damage to the vehicle.

Commercial Union retained as counsel to defend Cause Number 3240 attorney Robert W. Brumfield of McComb. On March 10, 1975, Brumfield wrote Keith informing him he represented Commercial Union, the liability carrier of Jimmy Smith Chevrolet, Inc., in the suit instigated against him and Jimmy Smith Chevrolet, Inc., and the insurance company might be obligated to defend him. The letter went on to state the attempt of King to contact him several times and that he had received absolutely no cooperation from him. He further stated: "I'm sure you must be aware that unless you cooperate with us in connection with this lawsuit that we will have no obligation whatever to defend you." The letter informed Keith that court started March 17, and Brumfield would appreciate Keith's being in his office Friday afternoon, March 14, so that he might discuss the case with Keith, as well as possible defenses. He concluded by telling Keith: "In the event you fail to cooperate with us, we will be forced to decline to defend you in the suit." A copy of the letter was sent to State Farm's claims superintendent.

Also on March 10, 1975, Brumfield talked with attorney R. B. Reeves. Record revelation of that conversation is limited to a letter from Brumfield to King dated March 11, 1975, stating he had talked with Reeves the day before, who told him Keith "would not cooperate in that they were filing a suit on his behalf against both Jimmy Smith Chevrolet and the Illinois Central Railroad."

The Alexanders, following institution of suit against them in Cause Number 3240, notified their insurance carrier State Farm, who called upon Commercial Union as the primary carrier to furnish a defense for Keith. Commercial Union refused to do so, on the ground Keith had failed and refused to cooperate in the defense of the suit of Merle Arnold.

Because Commercial Union refused to furnish any defense (other than Brumfield), State Farm retained the services of Wise, Carter, Child, Steen and Caraway of Jackson, who in turn associated the firm of Reeves and Reeves of McComb, to defend the declaration on behalf of Keith and his parents in Cause

11

No. 3240, and the counterclaim of Jimmy Smith Chevrolet, Inc., in Cause No. 3241.

During the ensuing months, several demand letters were written by State Farm's counsel to Commercial Union to defend Cause Number 3240 and the counterclaim in 3241. Commercial Union took no action whatever to defend Keith Alexander, however, taking the position that because he had refused to cooperate, he had forfeited any right under Commercial Union's policy.

Cause Number 3241 was tried in October 1975, resulting in a verdict in favor of the defendants on the declaration, and in favor of Keith on the counterclaim. Neither side recovered anything. Mrs. Arnold the plaintiff in 3240, dismissed her suit without prejudice in April 1977.

Following the conclusion of the circuit court actions State Farm instituted this action in Chancery Court of Pike County to recover from Commercial Union $ 4,970.44 in attorney's fees and expenses incurred in the representation of the circuit court actions.

The chancellor ruled Commercial Union owed no defense in the counterclaim, but did owe a defense in the suit of Mrs. Arnold. He further ruled, however, that since the local firm of Reeves and Reeves did not separate the two causes of action in itemizing their bills so that any sum could be allocated to each, and further that the law firm of Wise, Carter, Child, Steen & Caraway failed to allocate expenses and fees for services rendered between the two actions, damages could not be allowed there, either.

*State Farm Mut. Auto. Ins. Co.*, 394 So. 2d at 891-93. This Court affirmed the chancellor's

judgment, stating:

Insofar as any refusal of Keith to discuss the case with attorney Brumfield, who was employed by Commercial Union to defend Cause Number 3240, the situation materially changed. Following Brumfield's March 10, 1975, conversation with Reeves on the telephone, Brumfield as well as the carrier, had notice a conflict of interest did exist, and one in which he, Brumfield, obviously could not represent both Jimmy Smith Chevrolet, Inc. and Keith.

In view of the fact Brumfield obviously could not represent Jimmy Smith Chevrolet, Inc. and Keith, the duty was upon Commercial Union to select independent counsel. It made no effort whatever to do so, although it was

12

repeatedly called upon by counsel for State Farm to make a defense of the actions. Apparently, the position of Commercial Union was: (a) Keith had breached the policy in failing to cooperate with King and thereafter Brumfield, and following this Keith had forfeited all rights under the policy, or (b) Keith could either take Brumfield as his lawyer to represent his interest as defendant in 3240, and in defense of the counterclaim in 3241, or take nothing. Neither position has any merit.

Heretofore this Court has addressed the contractual duty of a liability insurance carrier to defend suits brought against the insured. *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.*, 255 So. 2d 667 (Miss. 1971); *Travelers Indemnity Co. v. East*, 240 So. 2d 277 (Miss. 1970); *Travelers Insurance Co. v. General Refrigeration & Appliance Co.*, 218 So. 2d 724 (Miss. 1969). It is a serious duty, requiring a good faith effort to protect the insured's interest in court. There is no higher ethical duty in the legal profession than complete, absolute fidelity to the interest of the client. An attorney obviously should not attempt to represent a party when he is obligated to represent an adverse interest, and a conflict of interest appears.

Because Commercial Union had a clear duty to defend, which duty State Farm as the secondary carrier fulfilled upon Commercial Union's failure to do so, it follows State Farm is entitled to all reasonable and necessary expenses in fulfilling Commercial Union's obligations.

*State Farm Mut. Auto. Ins. Co.*, 394 So. 2d at 894.

¶20. In *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 601 F. Supp. 286, 290 (S.D. Miss. 1984), the District Court for the Southern District of Mississippi applied this Court's holding in *State Farm Mutual Automobile Insurance Co.*, 394 So. 2d at 893-94, expanding its holding to require coverage where there was notice of the accident but a lack of a demand to defend. In *Universal Underwriters Insurance Co.*, 601 F. Supp. at 287, an automobile operated by Nanette Johnson collided with a vehicle operated by Patricia Dianne Gray. Johnson's automobile was owned by Joel Johnson Imported Motor Cars, Inc. (Joel Johnson). Joel Johnson maintained a liability

13

insurance policy with Universal; State Farm had in effect an insurance policy covering

Johnson. *Id*. Universal was notified of the accident and denied coverage on at least two

occasions. *Id*. Gray sued Johnson; State Farm defended Johnson in the suit. *Id*. The court

held:

> In this case, the State Farm policy was issued to the driver and the Universal policy covered the owner of the vehicle and the vehicle involved in the accident. Therefore, the court concludes that Universal provided primary coverage.
>
> Universal's contention that State Farm acted as a volunteer and is thereby precluded from recovery is without merit. In *State Farm Mutual Automobile Insurance Company v. Allstate Insurance Company*, 255 So. 2d 667 (Miss.1971), the Mississippi Supreme Court rejected a similar argument.
>
> . . .
>
> State Farm has entered into and has taken on the responsibility inherent in a solemn contract of insurance and does not fit under any definition of volunteer. *See Id*. at 669.
>
> Having determined that the Universal policy provided primary coverage, the court concludes that the issue for determination is similar to the one faced by the Mississippi Supreme Court in *State Farm Mutual Automobile Insurance Company v. Commercial Union Insurance Company*, 394 So. 2d 890 (Miss.1981). In that case, Keith Alexander was involved in an accident while driving a car owned by Jimmy Smith Chevrolet, Inc. Alexander's parents maintained an automobile liability insurance policy with State Farm and Jimmy Smith Chevrolet was insured by Commercial Union. Two suits were filed: one by Alexander's passenger against Alexander, his parents, Illinois Central Gulf Railroad and Jimmy Smith Chevrolet; the other by Alexander against the railroad and Jimmy Smith Chevrolet. A counterclaim was brought against Alexander in the suit in which he was the plaintiff. Both Alexander and Commercial Union employed attorneys. Alexander refused to cooperate with Commercial Union's attorney or adjusters. A jury returned a verdict for the defendant in Alexander's case and the suit brought by the passenger was dismissed without prejudice.

14

**The Mississippi Supreme Court acknowledged an insured's duty to cooperate with a carrier's investigation but held that, without a showing of prejudice to Commercial Union, the insured's rights under the policy were not forfeited.** *Id*. at 893. The court affirmed the chancellor's holding that Commercial Union owed Alexander a defense in the suit brought by Alexander's passenger but not for the counterclaim in the other suit. The Supreme Court stated:

> Because Commercial Union had a clear duty to defend which duty State Farm as the secondary carrier fulfilled upon Commercial Union's failure to do so, it follows State Farm is entitled to all reasonable and necessary expenses in fulfilling Commercial Union's obligations." [sic]

*Id*. at 894.

The court awarded State Farm the attorneys' fees paid for defense of the insured.

Universal would contend that the *State Farm v. Commercial Union* case is not dispositive because Universal asserts that it **received no demand to defend**. **This court finds, however, that Universal's notice of the accident and of its responsibility under Mississippi law to defend was sufficient to impose liability on Universal.**

State Farm's affidavit does not separate its expenditures for these claims from the claim barred from review by this court. Since the court is without evidence of State Farm's "reasonable and necessary expenses in fulfilling [Universal's] obligations," *State Farm v. Commercial Union*, 394 So. 2d at 894, the amount in which Universal is liable to State Farm remains a question of fact.

Therefore, this court finds that Universal is liable to State Farm for the reasonable and necessary expenses incurred in defense and settlement and payment of the judgment relating to personal and property damage to Gray arising from the automobile accident with Nanette Johnson.

*Universal Underwriters Ins. Co.*, 601 F. Supp. at 290-91 (emphasis added).

¶21. In *Jones v. Southern Marine & Aviation Underwriters, Inc.*, 888 F.2d 358, 359 (5th Cir. 1989), plaintiffs sued Tomlinson Interests, Inc., and other defendants in connection with

15

an above-ground blowout. Tomlinson had comprehensive general liability coverage issued by Hartford Accident and Indemnity Company and Hartford Casualty Insurance Company. *Id*. Tomlinson also had coverage for controlling a blowout under two certificates of insurance, subscribed by Underwriter, Lloyd's of London. *Id*. The damages were covered under these certificates. *Id*.

¶22. After trial began, a settlement was reached, without the consent or involvement of Underwriters, in the amount of $1,665,283 plus interest. *Jones*, 888 F.2d at 360. Hartford paid its policy limits toward the satisfaction of the judgment, leaving $600,000 unpaid. *Id.* Plaintiffs filed a suggestion of garnishment against Underwriters for the outstanding balance. *Id*. The United States Court of Appeals for the Fifth Circuit considered whether Underwriters's lack of consent to the settlement and lack of knowledge of the settlement negotiations as required in the policy relieved Underwriters of liability, stating:

> It is undisputed that, contrary to this provision's requirement, **Underwriters did not consent to the agreed judgment**. **Neither did Underwriters participate in settlement negotiations**. Plaintiffs' list of the persons who negotiated the agreed judgment confirms Underwriters' absence. In fact, neither Tomlinson nor Hartford ever notified Underwriters that settlement negotiations were being held, nor did Tomlinson ever seek Underwriters' consent before the settlement was executed and the agreed judgment was entered. **Rather, Plaintiffs pursued the limits of coverage under Hartford's policies.**
>
> **Generally, when an insured makes a settlement without the insurer's previous consent as required by the policy, the insured is not entitled to reimbursement from the insurer because the insured has breached a condition of coverage.** *See* 7C J. Appleman, Insurance Law and Practice 4714 at 521 (1979). Therefore, by the very terms of the insurance certificates, **Tomlinson's failure to obtain the participation and consent of Underwriters in the negotiation and execution of the agreed judgment**

16

**would appear to release Underwriters from any liability under the agreed judgment**.

*Jones*, 888 F.2d at 361 (emphasis added).

¶23.   In *Jones*, the Plaintiffs further argued that Tomlinson did not have to formally tender a demand to defend to Underwriters or make a claim under the certificates for Underwriters to be liable for the agreed judgment. *Jones,* 888 F. 2d at 364.  The court considered the argument and held:

> **Tomlinson never specifically demanded or requested that Underwriters provide a defense in the state court action.**  Under the law of Mississippi, an insurer upon whom no demand to defend was made **nevertheless can be held liable for claims settled by its insured, if the insurer had notice of the event potentially within policy coverage and of its legal responsibility to defend.** *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286, 290 (S.D. Miss. 1984) (insurer twice denied coverage to insured).  It is undisputed that Underwriters had notice of the state court action against Tomlinson and even had a legal representative present at trial and at the pretrial conference.   Plaintiffs urge that Underwriters' presence relieved Tomlinson of any duty of formal demand and that it is enough to show a breach of Underwriters' duty to defend.

> **Although Underwriters were fully aware of the state court action, they did not have notice of any legal responsibility to defend.  Hartford conducted the entire defense.  Neither Tomlinson nor Plaintiffs ever sought coverage or a defense from Underwriters for Plaintiffs' claims in the state court action.**  Instead, Tomlinson directed all of Plaintiffs' claims to Hartford.  The summary judgment evidence shows **that Tomlinson took the position in the state court action that only the Hartford policies covered Plaintiffs' claims**. Underwriters' presence at the pretrial conference and the trial indicates that they were aware their coverage might be implicated; however, their interest in following the ongoing proceedings does not imply an unwillingness to defend.  **Plaintiffs do not show how the presence of Underwriters at the trial obliged them to defend or made them liable under a settlement.**

17

*Jones*, 888 F.2d at 364 (emphasis added). The Fifth Circuit focused its holding on the fact that Tomlinson was represented by Hartford and took the position that Hartford's policies covered the defense, pointing out that Tomlinson never made a demand for defense or requested coverage from Underwriters. The factual situation in *Jones* is similar to the case at hand.

¶24. Here, D&B relied upon the legal representation provided by Travelers. Neither D&B nor Travelers ever demanded that Progressive defend D&B. The first demand for coverage from Progressive came from Travelers after the jury returned a verdict against D&B and Cooper made a settlement demand to satisfy the judgment. Travelers, as D&B's liability insurance company, selected and retained D&B's legal representation. D&B maintained at all times that Carey was not employed by D&B. Carey also maintained that he was an independent contractor, not an employee of D&B. Carey did not attempt to shift liability to D&B. Cooper's amended complaint states that Carey maintained he was an independent contractor. Therefore, both Carey and D&B asserted that D&B was not vicariously liable to Cooper for any act of negligence on the part of Carey.

¶25. Following the approach in *Jones*, we reverse the judgment of the trial court. *Jones,* 888 F. 2d at 364. D&B chose its theory of defense, maintaining that Carey was an independent contractor, and chose to seek coverage and representation under its liability insurer, Travelers. Based on Carey's *and* D&B's assertions that Carey was not an employee of D&B, Progressive properly relied on Travelers' representation and coverage of D&B. Even on appeal, Travelers does not maintain that Carey was an employee of D&B. Because

18

the jury failed to agree with D&B's chosen theory of defense, the jury's verdict does not retroactively obligate Progressive to indemnify Travelers.

## CONCLUSION

¶26. Accordingly, we reverse the judgment of the Holmes County Circuit Court granting Travelers Indemnity Company of Illinois' motion for summary judgment and render judgment in favor of Progressive Gulf Insurance Company.

¶27. **REVERSED AND RENDERED**.

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. RANDOLPH, J., CONCURS IN PART AND IN RESULT. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION**.