**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 16, 2009

No. 08-60521

BARDEN MISSISSIPPI GAMING LLC, doing business as Fitzgerald's Casino

Plaintiff - Appellant

v.

GREAT NORTHERN INSURANCE COMPANY; TOP LINE SEATING INC

Defendants - Appellees

---

Appeal from the United States District Court
for the Northern District of Mississippi

---

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this insurance dispute, Barden Mississippi Gaming LLC ("Barden") appeals the district court's order of summary judgment in favor of Great Northern Insurance Company ("Great Northern") and Top Line Seating, Inc. ("Top Line"). The district court concluded that Great Northern was not obligated to provide a defense and indemnification to Barden in a separate lawsuit brought by a person who allegedly suffered personal injuries in Barden's casino through the use of a stool sold by Top Line. For the following reasons, we vacate and remand.

I

In May 2002, Top Line sold Barden 800 slot machine stools for use in its casino. Due to problems with the stools, in February 2003 Barden filed a state court action against Top Line. The case was removed to federal court, and the parties reached a settlement agreement in October 2003. The Settlement Agreement provided for the modification of 100 of the 800 defective stools, and stated:

> [Top Line] agrees as to the said 700 stools to name [Barden] as an additional insured in [Top Line's] liability and any excess (umbrella) liability insurance policy(ies), with the same or similar coverage as per the attached Certificate except for excess liability coverage which will be a minimum of $500,000.00 through October 15, 2012. Such will insure [Barden], on an occurrence basis, for third party claims for personal injury, death or property damage arising from the sole negligence of [Top Line] regarding the 700 stools. Barden approves the additional insured language contained in the attached Certificate of Liability Insurance that will be effective for occurrences taking place on or after the date of this Agreement, per the terms of the attached Certificate.[1]

The "Certificate" referenced in the Settlement Agreement is the "Certificate of Liability Insurance," which was an endorsement to the insurance policy issued by Great Northern. The Certificate provided:

> Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel is named as an additional insured but only with respect to their liability for:
>
> > * bodily injury or property damage caused by the sole negligence of Top Line Seating, Inc.; and

---

[1] The Settlement Agreement specifies the insurance coverage for the 100 modified stools and the 700 unmodified stools in separate provisions. This provision refers to the 700 unmodified stools. Elsewhere in the Settlement Agreement, identical coverage is provided for the 100 modified stools.

* occurrences taking place on or after the effective date of the settlement agreement dated October 29, 2003, between Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel and Top Line Seating, in connection with the goods or products described in the schedule below:

Schedule

Person or organization: Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel

Goods or products: 800 slot stools shipped by Top Line Seating, Inc. to Barden Mississippi Gaming, LLC d/b/a Fitzgeralds Tunica Casino/Hotel, such stools being the same as those which are the subject of a lawsuit entitled Barden Mississippi Gaming LLC d/b/a Fitzgeralds Tunica Casino/Hotel v. Top Line Seating, Inc. filed in Tunica County, Mississippi, Docket No. 2003-0249.

Top Line modified 100 of the stools after the Settlement Agreement was executed. Some of the modifications took place at Top Line's facility in New Jersey while others occurred at Barden's facility in Tunica, Mississippi. For the modifications performed in Tunica, employees from both Barden and Top Line participated in removing the stools from the gaming floor. Barden employees performed daily safety inspections of all slot machine stools.

In June 2004, Mary Geraldine Baier sued Barden and Top Line in Mississippi state court for personal injuries allegedly caused by one of the 800 stools. Barden requested that Top Line's insurer, Great Northern, provide a defense and indemnification in the suit. In previous incidents regarding the 800 stools, Great Northern either defended and indemnified Barden or made contributions to settle the claims. However, in the *Baier* case, though Great Northern initially agreed to defend and indemnify Barden and retained counsel to do so, Great Northern later withdrew its agreement. Since then, Top Line and Great Northern have refused to provide Barden with any defense or indemnification in the ongoing suit.

Barden filed this lawsuit in February 2007, seeking a declaratory judgment that it is entitled to a defense and indemnification in the *Baier* case under the Settlement Agreement and insurance policy. The parties filed cross-motions for summary judgment, and the district court denied Barden's motion and granted those of Top Line and Great Northern. Specifically, the district court concluded that the Settlement Agreement and Certificate of Insurance are not ambiguous, and that no genuine issue of material fact existed as to whether Top Line and Great Northern met their obligations to Barden. This appeal followed.

## II

We review the district court's grant of summary judgment *de novo,* applying the same standard as the district court. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). We view all facts in the light most favorable to the non-movant, and affirm only when the evidence "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c); *see also Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008). The parties agree that Mississippi law applies to this diversity case.

## III

Barden argues that the district court erred by concluding that Great Northern and Top Line are not required to provide it with a defense and indemnification in the *Baier* case. Specifically, Barden argues that the Settlement Agreement and insurance policy both unambiguously obligate Great Northern and Top Line to defend and indemnify it in this situation. In the alternative, Barden argues that the Settlement Agreement and insurance policy are ambiguous because they can be read in two different ways, one which would require a defense and indemnification in the *Baier* case and one which would not.

Under Mississippi law, the determination of whether an insurance company has a duty to defend and indemnify depends on the language of the policy and the allegations in the underlying complaint. *See Am. Guarantee & Liab. Ins. Co. v. 1906 Co.,* 273 F.3d 605, 610 (5th Cir. 2001); *Delta Pride Catfish v. Home Ins. Co.,* 697 So. 2d 400, 403 (Miss. 1997). Specifically, if the policy arguably covers the claim as alleged in the underlying complaint, the duty to defend attaches. *See Am. Guar. & Liab.,* 273 F.3d at 610 (interpreting Mississippi law to find that "[i]f the complaints state a claim that is within or arguably within the scope of coverage provided by the policy, [the insurer] is obliged to defend and, if necessary, indemnify"). Any doubt regarding the existence of a defense obligation is resolved in the insured's favor. *Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.,* 177 F.3d 326, 331 (5th Cir. 1999). The duty to defend is broader than the duty to indemnify, because the insurer has a duty to defend when there is any possible basis for liability under the policy. *See Am. Guar. & Liab.,* 273 F.3d at 610.

Accordingly, we must first determine whether the insurance policy arguably covers the claim in the *Baier* case. If it does, then the duty to defend attaches. In Mississippi, the interpretation of an insurance policy is a question of law. *Progressive Gulf Ins. Co. v. Dickerson & Bowen, Inc.,* 965 So. 2d 1050, 1054 (Miss. 2007). If the words of the insurance policy are "plain and unambiguous," they are applied as written. *Id.* However, ambiguous language must be resolved in favor of the insured, and provisions that limit or exclude coverage must be construed liberally in favor of the insured. *Id.*

Here, the district court determined that the policy unambiguously limits the duty to defend and indemnify to claims involving the "sole negligence" of Top Line. We agree with the district court. The language of the Settlement Agreement plainly states that coverage is limited to "third party claims for personal injury, death or property damage arising from the sole negligence of

[Top Line] . . . ." Further, the Certificate unambiguously sets out two conditions precedent to coverage, namely 1) bodily injury or property damage caused by the sole negligence of Top Line, 2) which occurs after October 29, 2003 and involves one of the 800 stools. Though Barden argues that these two conditions can be interpreted to describe separate situations, either of which trigger coverage, this argument lacks merit. The two conditions are unambiguously phrased in the conjunctive, not the disjunctive; they are connected with the word "and," not "or." Moreover, the goods to which the policy relates, the 800 stools, are referenced only in the second condition. If Barden's argument that the conditions apply separately were adopted, the policy would cover any injury or property damage caused by Top Line regardless of whether the 800 stools were involved. We therefore conclude that the policy is unambiguous, and only provides coverage where Top Line is solely negligent.[2]

However, this does not end the inquiry. In granting summary judgment, the district court found that the undisputed facts showed that Top Line was not solely negligent in the *Baier* case. This determination was premature, since until the *Baier* case is resolved we will not know whether Top Line was solely negligent. Under Mississippi law, if a liability insurance policy arguably covers the claim as alleged in the underlying complaint, the duty to defend attaches. *See Am. Guar. & Liab.*, 273 F.3d at 610. This rule makes sense in light of the issue presented in this case, where the need for a defense necessarily arises long before the precise allocation of liability is determined at trial. Here, the policy arguably covers the *Baier* case, because the *Baier* complaint does not foreclose

---

[2] Barden also argues that this interpretation of the insurance policy creates a "legal impossibility," because Barden could never be held liable in a situation where Top Line is solely negligent. We disagree. The plain language of the insurance policy covers cases where Barden is sued, but the results of the litigation indicate that Top Line is solely negligent. This could occur when evidence at trial reveals a latent manufacturing defect in a stool that Barden could not have detected, or in cases brought under strict liability.

a judgment that Top Line was 100% negligent. It is undisputed that the *Baier* case involves one of the 800 stools sold to Barden by Top Line, and that the alleged injury occurred after the date of the Settlement Agreement. The complaint alleges negligence against Barden and Top Line.[3] Importantly, the complaint alleges a defective product, meaning that it is possible that Ms. Baier's injuries could ultimately be attributed to some latent defect in the stool that Barden could not have detected even with the utmost diligence. Under this scenario, Top Line could be found 100% negligent. Since the policy arguably covers the claim in the *Baier* case as alleged in the underlying complaint, we hold that the duty to defend attaches.

Great Northern and Top Line's duty to indemnify Barden, however, is a separate issue. We have observed that under Mississippi law, the insurer's duty to defend is broader than the duty to indemnify, because the insurer has a duty to defend when there is any arguable basis for liability under the policy. *Id*. However, it is clear under the insurance policy that the duty to indemnify will attach only if Top Line is ultimately found 100% negligent. In this case, as indicated above, we will not know whether Ms. Baier's injury resulted solely from Top Line's negligence until the resolution of her lawsuit. Accordingly, the question of whether Barden is owed indemnification is premature, and should be resolved after the conclusion of the *Baier* case.

IV

For the foregoing reasons, we VACATE the district court's order granting summary judgment in the respondents' favor and REMAND for further proceedings consistent with this opinion.

---

[3] Though Top Line has been dismissed from the *Baier* case, the dismissal was without prejudice. Further, the fact that Top Line was dismissed as a party does not foreclose the possibility that the injury could be solely attributed to Top Line's negligence.