# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 15, 2014

Lyle W. Cayce
Clerk

No. 12-60561

_____

CARL E. WOODWARD, L.L.C.; GRAY INSURANCE COMPANY,

Plaintiffs – Appellees – Cross
Appellants

v.

ACCEPTANCE INDEMNITY INSURANCE COMPANY,

Defendant – Appellant – Cross
Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

ON PETITION FOR REHEARING

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:

Carl E. Woodward, LLC has filed a petition asking for panel rehearing of the court's decision in *Carl E. Woodward, L.L.C. v. Acceptance Indem. Ins. Co.*, 743 F.3d 91 (5th Cir. 2014). The petition is DENIED.

Woodward challenges the panel's conclusion that the claims alleged against it in a "complaint" (actually, cross-claims by a co-defendant), taken together with the damages identified in the Rimkus Report, did not state a claim for damages arising out of DCM's ongoing operations. Stated alternatively, Woodward argues we erred in concluding that the only alleged

damages were those for construction in nonconformance to plans and specifications that arose out of DCM's completed operations.

In its petition for rehearing, Woodward makes no argument that the complaint itself made the necessary allegations. Instead, the petition relies solely on the Rimkus Report to argue that allegations were sufficient to create a duty to defend because of DCM's work. Citing this court's prior interpretations of Mississippi law, Woodward argues that all doubts about whether a duty to defend exist must be resolved in favor of the insured. *Barden Miss. Gaming, LLC v. Great N. Ins. Co.*, 576 F.3d 235, 238 (5th Cir. 2009). In Woodward's view, because the Rimkus Report claims that damage to exterior walls was caused by the defects in the concrete work, and because the Report does not say when that damage occurred – before or after operations were complete – the silence creates doubt, which creates duty. We disagree.

We start with the part of our initial opinion that is the focus of the rehearing. There, we assumed without deciding that the Rimkus Report is relevant for purposes of determining whether Acceptance had a duty to defend Woodward. *Woodward,* 743 F.3d at 97. The situations to which we analogized the Rimkus Report were circumstances where a defendant learned, due to its own investigations, about facts that created a duty to defend even when the complaint did not make a sufficient allegation. *See Auto. Ins. Co. of Hartford v. Lipscomb,* 75 So. 3d 557 (Miss. 2011) (citing *Mavar Shrimp & Oyster Co., Ltd. v. U. S. Fid. & Guar. Co.,* 187 So. 2d 871 (Miss. 1966)).

> The question the older case, *Mavar*, answered in the affirmative was
>
> whether the Insurance Company, under the terms of the policy here, has the duty to defend a case where the declaration alleges facts that do not come within the terms of the policy, but the insurer knows, or by means of an investigation ascertains, that the allegations are false.

2

*Mavar*, 187 So. 2d at 874-75. The later decision, *Lipscomb*, relied on *Mavar* to restate that an insurer's own investigation can create a duty to defend if it uncovers facts that create a potential for coverage:

> An insurance company's duty to defend is not triggered until it has knowledge that a complaint has been filed that contains allegations of conduct covered by the policy. These allegations, and particularly the conduct alleged in the complaint, determine whether an insurer is required to defend an action. No such duty arises when the alleged conduct falls outside the policy's coverage. But where, through independent investigation, an insurer becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage.

*Lipscomb*, 75 So. 3d at 559 (footnotes omitted).

There was no insurance-company investigation in our case to supplement the complaint. Instead, the claimant provided its investigative report to the insurance company. Woodward on rehearing emphasizes the following passages in the Rimkus Report that identify how the concrete work on the balconies allegedly caused water damage in the condominium units: DCM "failed to comply with the construction drawings and industry standard[;] . . . this error has created conditions conducive to water intrusion[;] . . . [w]ater intrusion has caused and continues to cause water damage in the exterior walls of the balconies." Woodward insists that because these statements do not indicate when the water damage occurred, they could be claiming that the damage occurred during DCM's ongoing operations. Woodward then argues that this potential means that Acceptance had a duty to defend Woodward.

There are significant problems with such an interpretation. The Rimkus Report itself explains that its conclusions are based on inspections made at the

earliest in March 2008, with the balconies and walls being inspected in November 2008. The Rimkus Report also states that substantial completion of the entire project, not just the concrete subcontractor's part, occurred on August 6, 2007. Thus, the Rimkus Report itself fully explains that the subcontractor's ongoing operations had to have been completed well before August 2007; in November 2008, water damage was discovered in the walls of the balconies attributable to the concrete work. The report makes no assertions about when the walls were built or whether it was reasonable to believe from the 2008 inspections that any of the claimed damage occurred before the concrete subcontractor completed its work. Whether the Rimkus Report's failure to say anything about the timing of the damages should be interpreted under Mississippi law to create a duty to defend is the question Woodward seeks us to answer in its favor. We conclude it does not.

"[W]e apply Mississippi substantive law" when analyzing an insurer's duty to defend claims arising in that state. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Whether Acceptance owed Woodward the duty to defend "depends on the language of the policy and the allegations in the underlying complaint." *Barden Miss. Gaming*, 576 F.3d at 238. Recent decisions by the Mississippi Supreme Court provide that an insurer's duty to defend is triggered when "the allegations of a complaint reasonably bring a claim within the coverage of its policy." *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920 So. 2d 440, 451 (Miss. 2006). The court further held that "an insurance company's duty to defend its insured is triggered when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy." *Id.* That same test was reiterated as recently as in 2013. *See Southern*

*Healthcare Services, Inc. v. Lloyd's of London*, 110 So. 3d 735, 747 (Miss. 2013) (quoting *Baker Donelson*, 920 So. 2d at 451).[1]

These opinions were addressing the interpretation of complaints. Woodward, on rehearing, is arguing that something besides the complaint, *i.e.*, the Rimkus Report, created uncertainties that must be read in favor of a duty to defend. We should not overlook that when *Lipscomb* and *Mavar* broadened the sources of information relevant for triggering a duty to defend, the new information was that uncovered by an insurer's own investigation. Those two cases require consideration of what an insurer actually *knows*, not on what arguably might be meant by an ambiguous explanation in an investigative report by the claimant. In other words, neither case dealt with our question, which is whether to give a broad reading to a second set of allegations outside of a complaint. Thus, the Rimkus Report can be distinguished from what an insurer learns from its own investigations, just as the factual information gained from an insurer's own investigation can be distinguished from the allegations in a complaint. Nonetheless, we need not in this case decide how liberally an insurer should interpret a report on a claimant's investigations in deciding if there is a duty to defend. Read literally or liberally, the Rimkus Report does not make a claim of conduct covered by the policy.

We conclude simply that the identified passages in the Rimkus Report, even if the report should be considered in analyzing the duty to defend, do not reasonably and plausibly state that the damages occurred during DCM's ongoing operations. Taken as true, the statements in the Rimkus Report

---

[1] This court has at times used the articulation that under Mississippi law the duty to defend is triggered "[i]f the complaint state[s] a claim that is within or arguably within the scope of coverage provided by the policy." *Am. Guarantee and Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001). We do not suggest there is any difference between this articulation and the recent Mississippi caselaw we cite. We do conclude, though, that the clear and recent Mississippi interpretations must be followed.

identify only that DCM failed to conform its work to plans and specifications and that, when the condominium units were inspected well after substantial completion of the entire project, water damage was found. The report cannot reasonably and plausibly be seen as making or even desiring to make any allegations about when those damages first arose.

Because the complaint and report do not allege that damage occurred during DCM's ongoing operations, they do not state a claim within the scope of coverage provided by the policy.

The petition for rehearing is DENIED.

HAYNES, Circuit Judge, joins in denying rehearing only.